In re Mark Alan STONE, Debtor.

Stephanie Leigh STONE, Plaintiff,

v.

Mark Alan STONE, Defendant.

Bankruptcy No. 95–03837–TBB–7.
Adversary No. 95–00437.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Aug. 22, 1996.

James S. Witcher, Jr., Birmingham, Alabama, for Stephanie Leigh Stone.

Suzanne Yayman, Birmingham, AL, for Mark Alan Stone.

1. Pursuant to Fed.R.Bankr.P. 7052(a), the findings of fact and conclusions of law are set forth in this Memorandum Opinion.

2. Although only 11 U.S.C. § 523(a)(15) was plead, the parties stipulated that certain debts were to be held nondischargeable under 11 U.S.C. § 523(a)(5). Even in the absence of the stipulation, whether debts are nondischargeable under § 523(a)(15) places before this Court con-

## MEMORANDUM OPINION

THOMAS B. BENNETT, Bankruptcy Judge.

### A. Fact Environment [1]

Often a consequence of the ending of a marriage is financial difficulty for former spouses. This is just such a case. The marriage of Stephanie Leigh Stone (Mrs. Stone) and Mark Alan Stone (Mr. Stone) was dissolved by order of the Judicial Circuit Court of Jefferson County, Alabama entered on January 10, 1995 (Divorce Decree). The Stones' have one child who resides with Mrs. Stone. Under the Divorce Decree's terms, Mrs. Stone was awarded primary custody of the child.

Within six months of the divorce becoming final, on June 30, 1995, Mr. Stone filed a voluntary chapter 7 bankruptcy case. By October 2, 1995, in an attempt to avoid the discharge of certain marital debts made obligations owed by Mr. Stone under the terms of the Divorce Decree, Mrs. Stone filed an adversary proceeding requesting that certain of these debts be nondischargeable under 11 U.S.C. § 523(a)(15) as obligations not in the nature of alimony, maintenance, and/or support for which (i) Mr. Stone had the ability to pay, and (ii) the benefit of discharging these marital debts does not exceed the detriment to Mrs. Stone and/or the Stones' child from their discharge. In the alternative, Mrs. Stone has requested denial of discharge of her former husband under 11 U.S.C. § 727(a)(4)(A) for his alleged knowing and fraudulent making of a false oath or account in connection with his bankruptcy case.

At the commencement of trial, the parties stipulated that certain responsibilities of Mr. Stone set forth in the Divorce Decree are nondischargeable under 11 U.S.C. § 523(a)(5) [2]: (i) child support of five hundred fifteen dollars ($515.00) per month; (ii)

sideration of the applicability of § 523(a)(5) as well as § 523(a)(15). Finally, Fed.R.Civ.P. 15(b) and Rule 7015 of the Rules of Bankruptcy Procedure allow amendments to pleadings to cause the pleadings to conform to the issues tried by express or implied consent of the parties. *Samayoa v. Jodoin (In re Jodoin)*, 196 B.R. 845 (Bankr. E.D.Cal.1996).

health insurance coverage for Mrs. Stone and the child; (iii) payment of any medical bills incurred by Mrs. Stone and the child after the divorce but before the health insurance coverage was obtained; (iv) and payment of the child's reasonable and necessary college expenses. Also and under the terms of the Divorce Decree, periodic alimony has been waived by both Mr. and Mrs. Stone.

As a result of the stipulations, the trial was of the exception to discharge contentions concerning three debts. One is Mr. Stone's obligation under the terms of the Divorce Decree to pay ten thousand dollars ($10,000.00) as alimony in gross in thirty-six monthly payments of two hundred seventy-seven dollars ($277.00) each. As of the date of the filing of his chapter 7 case, Mr. Stone's obligation had been reduced to eight thousand six hundred fifteen dollars ($8,615.00).[3] The other two are Mr. Stone's responsibility for two credit card obligations: a Master-Card and a Rich's revolving charge account. The alimony in gross, the MasterCard, and the Rich's revolving charge account obligations are hereinafter collectively referred to as the Disputed Marital Debts.

At the time of the divorce, Mrs. Stone earned ten dollars and fifty cents ($10.50) an hour as a dental assistant. Her total income in 1994 was eighteen thousand seven hundred sixty-three dollars and seventy-five cents ($18,763.75). At the time of trial, she was being paid eleven dollars ($11.00) an hour and her monthly expenses were asserted to exceed one thousand eight hundred dollars ($1800.00). No evidence of or other information upon which the Court could determine her 1995 income or estimates of her 1996 income were presented by either of the parties. Also, the expense evidence for Mrs. Stone included various items vouched to be monthly when, in fact, they were for undefined periods such as a "summer" or a portion of a year.

At the time of the divorce, Mr. Stone was employed by Banctec and earned an aggregate of fifty-three thousand one hundred eighty-four dollars ($53,184.00) per year which included overtime pay, a bonus, and certain other employee benefits such as a 401(k) plan contribution. His testimony was that his net pay ranged from around two thousand one hundred dollars ($2100.00) to two thousand five hundred dollars ($2500) per month. His expenses were asserted to be approximately three thousand dollars ($3000.00) per month. Mr. Stone's bankruptcy schedules reflect a monthly income after various tax and wage related deductions of two thousand four hundred sixty-nine dollars and nineteen cents ($2469.19) with monthly expenses of two thousand six hundred thirty-six dollars and thirty-three cents ($2636.33). Subsequent to his divorce, Mr. Stone voluntarily left Banctec and obtained employment as a salesperson at Gateway Homes with a yearly salary of twenty-six thousand dollars ($26,000). He also moved so he could live at his parents' house to reduce living expenses. At the time of trial, his take home pay after payroll deductions was represented to be about one thousand six hundred dollars ($1600.00) per month, and his monthly expenses were asserted to be approximately two thousand dollars ($2000.00). No evidence was presented regarding either Mr. Stone's or Mrs. Stone's future financial prospects. Also, the evidence of Mr. Stone's financial status as of the date of filing of his bankruptcy case to and including trial is not as conclusive or believable as Mr. Stone asserts. This is due to his voluntary, uninterrupted payment of debts which are otherwise dischargeable or for which he is not liable— at least one SouthTrust Bank loan and an American Express credit card debt—coupled with the incurring of additional debt to pay off pre-bankruptcy indebtedness.

It was and is undisputed that Mr. Stone failed to schedule three debts in his bankruptcy petition. He did not list an indebtedness to American Express and two promissory notes evidencing two loans made by SouthTrust Bank. One of the SouthTrust Bank loans was to Mr. Stone's grandfather for the down payment on the Stone's marital home. No evidence was presented to dem-

---

3. At trial, the Stones stipulated that if the alimony in gross obligation was declared nondischargeable, an amount equal to eight thousand six hundred fifteen dollars ($8,615.00) should be excepted from discharge.

onstrate that Mr. Stone has ever been liable for repayment of this debt. The other was one cosigned by his father which was used as a bill consolidation loan. The monies obtained were used, at least in part, to repay Mr. Stone's pre-bankruptcy American Express credit card indebtedness. After filing his bankruptcy, Mr. Stone repaid his American Express credit card debt to the extent of three thousand twenty-six dollars and thirty-six cents ($3026.36). Mr. Stone presented no evidence that the American Express obligation was not dischargeable. The evidence presented was that at the time of and after filing bankruptcy, Mr. Stone has been paying both SouthTrust Bank obligations. Continued payment of these obligations is inconsistent with Mr. Stone's professed inability to pay obligations owed to Mrs. Stone which are the subject of this suit. Likewise, Mr. Stone equivocated about the date he borrowed additional monies to repay his American Express debt. He could not state whether it was before or after his bankruptcy case was filed.

The only evidence presented at trial for Mr. Stone's failure to schedule at least one of the two SouthTrust Bank loans for which he believes he has an obligation to repay—the one for which no evidence exists to prove his liability—and the American Express credit card debt was Mr. Stone's mistaken understanding that a debt which he planned to pay in full did not have to be scheduled in his bankruptcy petition. This was not controverted by any evidentiary facts presented by Mrs. Stone.

Further casting a pale on the credibility of Mr. Stone's testimony regarding his financial capacity is his deposition testimony of January 16, 1996, during which he did not disclose various financial obligations and expenses. Yet at trial these obligations and expenses were disclosed for the first time in an attempt to avoid the impact of an exception to discharge of the Disputed Marital Debts.

So, too, for his inconsistent statements at trial regarding his income and expenses in response to questions by his counsel versus his answers to Mrs. Stone's counsel's inquiries. Based on the absence of evidentiary facts in the record coupled with the Court's discounting of Mr. Stone's credibility, insufficient facts were present at trial to enable the Court to determine the ability to pay of Mr. Stone under 11 U.S.C. § 523(a)(15)(A) and the benefit-detriment comparison of 11 U.S.C. § 523(a)(15)(B).

Although in the majority of cases involving exceptions to discharge, evidence is presented by both parties to a sufficient degree and quality to allow the trier of fact to rule without dealing with which party bears the burden of proof on a particular aspect of a case, this is not such a case. Here, resolution of the exception to discharge of the Disputed Marital Debts of Mr. Stone under § 523(a)(15) is required to be resolved by determination of who is assigned the burdens of proof for subsections (A) or (B) of 11 U.S.C. § 523(a)(15).[4] Making this determination is complicated by the fact that this Court must allocate the burdens of proof from the environment of an increasingly unclear body of case law taking divergent and often conflicting positions on who must prove what under § 523(a)(15). Before addressing this burden of proof allocation, one preliminary issue needs to be resolved: are the three types of disputed marital debts in the nature of alimony, maintenance, and support within the scope of 11 U.S.C. § 523(a)(5)?

## B. In the Nature of Alimony, Maintenance, or Support

Mrs. Stone claims as one basis for the exception to discharge of the Disputed Marital Debts that they are in the nature of alimony maintenance, and/or support under 11 U.S.C. § 523(a)(5). Section 523(a)(5) provides:

4. Due to ruling based on the quantum and quality of evidence presented and which party bears the burden of proof on § 523(a)(15)(A) & (B), this Court does not need to resolve various other issues under § 523(a)(15), including but not limited to, the proper time for assessing comparative benefit-detriment and inability to pay under

subsections (A) and (B) of § 523(a)(15), whether only a portion of a marital debt within § 523(a)(15)'s scope may be excepted from discharge, and the proper standards to be utilized to assess comparative benefit-detriment and inability to pay.

[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

■ When determining dischargeability, exceptions to discharge are generally construed liberally in favor of the debtor and against the creditor. This narrow construction provides an honest, but unfortunate debtor a fresh start. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir.1994); *TranSouth Fin. Corp. v. Johnson*, 931 F.2d 1505, 1508 (11th Cir.1991). The party opposing discharge of a debt generally bears the burden of persuasion and must establish that the elements of 11 U.S.C. § 523(a)(5) are met.[5] *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 723 (10th Cir.1993); *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 761 (3rd Cir.1990); *Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir.1987); *Long v. West (In re Long)*, 794 F.2d 928, 930 (4th Cir.1986); *Delaine v. Delaine (In re Delaine)*, 56 B.R. 460, 464 (Bankr.N.D.Al.1985).

■ Federal law determines whether a debt is excepted from discharge under § 523(a)(5). *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To establish whether the elements of § 523(a)(5) are met, an inquiry is made regarding wheth-

er the obligation is in the nature of support or a property settlement. *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444, 446 (11th Cir.1996); *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 906 (11th Cir.1985).

■ Although federal law governs the exceptability of debts, an examination of Alabama law facilitates determination of whether a debt is in the nature of alimony, maintenance, support versus a property settlement. *Strickland*, 90 F.3d at 446; *Delaine*, 56 B.R. at 466. Under Alabama law, alimony is awarded as periodic or 'in gross.' *Townsend v. Townsend (In re Townsend)*, 155 B.R. 235 (Bankr.S.D.Ala.1992); *Delaine*, 56 B.R. at 466. Periodic alimony, which is modifiable, provides for the maintenance and support of a former spouse. *Townsend*, 155 B.R. at 238; *Delaine*, 56 B.R. at 466. In contradistinction to periodic alimony, alimony in gross is part of the property settlement. *Townsend*, 155 B.R. at 238. An award of alimony in gross compensates a former spouse for the present value of marital rights terminated by the divorce. *Delaine*, 56 B.R. at 466. It is awarded as a lump sum or in fixed installments and is generally certain as to the time and amount of payment. *Delaine*, 56 B.R. at 466. Unlike periodic alimony, it is a vested right, meaning it is not subject to court modification. *Delaine*, 56 B.R. at 466. While periodic alimony which is for support and maintenance is not dischargeable under § 523(a)(5), alimony in gross as a form of property settlement may be dischargeable. *Townsend*, 155 B.R. at 238.

■ Based on the Divorce Decree in which the Stones waive 'alimony' of the sort within the scope of § 523(a)(5), the alimony having been awarded in partial satisfaction of the property settlement, the payment granted having been labelled alimony in gross which is considered a property settlement under Alabama law, and the alimony in gross meeting the case law definition of alimony in gross as a debt for a time certain and a set

---

**5.** Because the parties collectively presented sufficient evidence to resolve whether the contested marital debts are within the exception to discharge set forth under 11 U.S.C. § 523(a)(5), this Court does not consider whether the reported opinions of various courts properly allocate the burdens of proof under § 523(a)(5)(A) & (B).

amount, this obligation is not in the nature of alimony, maintenance, or support under 11 U.S.C. § 523(a)(5). Rather, it was part of the Stones' property settlement.

The MasterCard and Rich's credit card debts are also not in the nature of alimony, maintenance, or support. Mr. Stone's obligation is to pay these marital debts which were incurred on or before August 6, 1994, and it is set forth in the Divorce Decree as a part of the property settlement. Again they are clearly not a debt for alimony: the evidence presented is that alimony in the § 523(a)(5) sense was waived. No evidence was presented that they were for maintenance or support. Therefore, the Master-Card and Rich's credit card indebtedness, along with the alimony in gross, are not excepted from discharge under 11 U.S.C. § 523(a)(5).

### C. Allocation of Burdens of Proof or Who Proves What and When

#### I. 11 U.S.C. § 523(a)(15)

Prior to the Bankruptcy Reform Act of 1994, a former spouse, spouse, or child of a debtor (hereinafter collectively former spouse/spouse) could only prevent discharge of certain marital debts if they were in the nature of alimony, support or maintenance. 11 U.S.C. § 523(a)(5). Debts otherwise dealt with in a divorce decree, separation agreement, or similar order of a court were dischargeable. Troubled by the wholesale discharge of such debts, Congress enacted 11 U.S.C. § 523(a)(15).[6] Its decision was based in part on a determination that during divorce negotiations, a divorcing/separating spouse may agree to pay marital debts and hold the other spouse harmless for such debts or increase the amount of the property settlement in exchange for a reduction in alimony. The legislative history does not mention a similar tradeoff with respect to maintenance or support payments. H.R.Rep. No. 835, 103d Cong., 2nd Sess. 54 (1994).

**6.** The Bankruptcy Reform Act of 1994 set forth what has been placed in § 523(a)(15) as " '(e) Exception to Discharge—Section.523 of Title 11, United States Code, as amended by section 221, is amended by adding at the end the following:

Section 523(a)(15) provides that an individual seeking a discharge does not receive one from any debt

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; [hereinafter Ability to Pay] or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor [**hereinafter Detriment**].

11 U.S.C. § 523(a)(15).

■ This section is applicable to bankruptcy cases filed after October 22, 1994. A former spouse/spouse must timely file an adversary proceeding seeking to except such obligations from discharge. 11 U.S.C. § 523(c)(1). In most cases, this proceeding is required to be commenced no later than sixty days from the original date set for the § 341 meeting of creditors. Fed.R.Bankr.P. 4007(c); *In re Smither*, 194 B.R. 102, 106 (Bankr.W.D.Ky.1996); *Collins v. Hesson (In re Hesson)*, 190 B.R. 229, 236 (Bankr.D.Md. 1995); *Kessler v. Butler (In re Butler)*, 186 B.R. 371, 375 (Bankr.D.Vt.1995) If an adversary proceeding is not timely filed, these types of marital debts are discharged. 11 U.S.C. § 523(c)(1); *Butler*, 186 B.R. at 375.

(15)...' " Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 304(e), 108 Stat. 4106 (1994). As enacted, § 523(a)(15) is actually § 523(15).

## II. The Who, What and When for Burdens of Proof

Due to the confusion over what are burdens of proof in the § 523(a)(15) case law context, a discussion of burden of proof is necessitated. It encompasses two burdens: burden of persuasion and burden of production. *Director, Office of Workers' Compensation Programs, Dept. of Labor v. Maher Terminals, Inc.*, 512 U.S. 267, ——, 114 S.Ct. 2251, 2255, 129 L.Ed.2d 221 (1994); *Simpson v. Home Petroleum Corp.*, 770 F.2d 499, 501 (5th Cir.1985); Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 336 (2d ed. 1972); Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex. L.Rev. 33 (1934). Although the burden of proof technically has two aspects (persuasion plus production), it is frequently and commonly used to mean solely the burden of persuasion. *Maher Terminals, Inc.*, 512 U.S. at ——, 114 S.Ct. at 2255.[7]

The party with the burden of persuasion must provide proof to convince the trier of fact that the alleged state of facts is true. If evidence is evenly balanced, the party with the burden of persuasion loses. *Maher Terminals, Inc.*, 512 U.S. at ——, 114 S.Ct. at 2255; *Flav-O-Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.)*, 846 F.2d 1343, 1348 (11th Cir.1988) (If evidence is in equipoise, the one with the burden of proof loses.); Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 336 (2d ed. 1972); Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex. L.Rev. 33, 34 (1934) (The party with the burden of proof must produce in the trier of fact a positive conviction in his favor.) The party with the burden of going forward/the burden of production (hereinafter burden of

going forward) is required to present evidence to support his/her/its claims. Once this occurs to the degree required, the party opposing the asserted state of fact(s) then bears the burden of going forward to shift the evidentiary imbalance favoring the proponent of a state of affairs to one of either balance or imbalance favoring the opponent of such a state of fact. *Maher Terminals, Inc.*, 512 U.S. at ——, 114 S.Ct. at 2255; Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 336 (2d ed. 1972). Because of the common case law usage of burden of proof to mean only burden of persuasion, this Court will use this convention in this opinion: burden of proof will mean the party bearing the burden of persuasion on a fact issue.

## III. Who is Assigned Burdens of Proof[8] Under § 523(a)(15) or the Shiftless Burdens of Proof in the Shifting Realm of Case Law Implementation

### (i) References for Allocation

To answer the question of which party bears a burden of proof, various references need to be considered. One is substantive law. *Maher Terminals, Inc.*, 512 U.S. at ——, 114 S.Ct. at 2254; 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5122 (1977) (The burdens of proof and going forward are *not* part of evidence law. They are established by procedural and substantive law.) For 11 U.S.C. § 523(a)(15), the substantive law is federal bankruptcy law. Coupled with an examination of the substantive law set forth in the Bankruptcy Code, including § 523(a)(15), is consideration of legislative history, treatises, and existing decisional law. *See Grogan v. Garner*, 498 U.S. 279, 284, 111

---

7. In 1833, the Supreme Judicial Court of Massachusetts determined that the meaning of the term "burden of proof" was limited to the burden of persuasion. The Massachusetts court noted that the party whose case requires proof of a fact bears the burden of proof. Once the party establishes a prima facie case, the burden to produce evidence *but not the burden of proof* shifts to the opposing party. *Director, Office of Workers' Compensation Programs, Dept. of Labor v. Maher Terminals, Inc.*, 512 U.S. 267, ——, 114 S.Ct. 2251, 2255. The Supreme Court of the United States has adopted the Massachusetts approach

concerning the distinction between burden of proof and the burden to produce evidence. *Maher Terminals, Inc.*, 512 U.S. at.——, 114 S.Ct. at 2256; *Hill v. Smith*, 260 U.S. 592, 594, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923).

8. The burden of production is usually initially assigned to the party who bears the burden of persuasion. A test for allocating the burden of production is rarely, if ever, discussed. Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex.L.Rev. 33, 40–41 (1934).

S.Ct. 654, 658, 112 L.Ed.2d 755 (1991). In *Grogan*, the Supreme Court addressed the quantum of proof one assigned a burden of proof must present under § 523(a). To reach its holding, it reviewed the language of the Bankruptcy Code, its legislative history, the structure of § 523(a), state and federal decisional law, and comparable provisions of the Bankruptcy Act. *See Grogan*, 498 U.S. at 286–290, 111 S.Ct. at 659–61.

### (a) § 523(a)(15) Case Law

Since the enactment of § 523(a)(15), numerous bankruptcy courts have examined its language. The interpretation conundrum evidenced by divergent opinions of bankruptcy courts is illustrated by the fact that since the section became effective, three categories of cases exist which address and differently allocate the burdens of proof for the Ability to Pay standard of § 523(a)(15)(A) and the Detriment standard of § 523(a)(15)(B).

The opinions of the majority of reported cases—approximately twenty-eight (Majority Group)—reveal that this group of courts allocate to the debtor the burdens of proof for § 523(a)(15)(A) and (B) for Ability to Pay and Detriment. The second group (the Bifurcated Group), based on reported decisions consists of only three courts, allocates the burden of proof for Detriment to the former spouse/spouse and for the Ability to Pay to the debtor. The third category of courts (Minority Group)—five reported cases—places the burden of proof for all of § 523(a)(15), including Ability to Pay and Detriment, on the former spouse/spouse.

### (1) Majority Group—the Shift, the Noshift Shift, and What's a Shift

Under the Majority Group, once the former spouse/spouse timely files an adversary proceeding and demonstrates what this group of opinions view as a prima facie case—that the former spouse/spouse has a claim not of the type dealt with by § 523(a)(5) and awarded in the course of a divorce or separation—the debtor is given the burden of proof for the Ability to Pay standard and/or Detriment standard. Various rationale are given for this allocation.

*Cleveland v. Cleveland (In re Cleveland)*, 198 B.R. 394 (Bankr.N.D.Ga.1996) (Once the former spouse/spouse sets forth a claim under § 523(a)(15), the divorce related obligation is presumed nondischargeable. The burden of going forward shifts to the debtor to demonstrate that the requirements of either § 523(a)(15)(A) or (B) are met); *Johnston v. Henson (In re Henson)*, 197 B.R. 299 (Bankr.E.D.Ark.1996) (Upon the presentation by the former spouse/spouse of a prima facie case, applicable marital debts are presumed nondischargeable. The burden shifts to the debtor to overcome the presumption by proving either § 523(a)(15)(A) or (B).); *Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312 (Bankr.W.D.Ark.1996) (After the former spouse/spouse proves that § 532(a)(15) is applicable, the marital debts are presumed nondischargeable. The burden shifts to the debtor to overcome the presumption by proving either § 523(a)(15)(A) or (B).); *Samayoa v. Jodoin (In re Jodoin)*, 196 B.R. 845 (Bankr.E.D.Cal.1996) (The court follows the majority view because § 523(a)(15)(A) and (B) are drafted as defenses rather than essential elements of nondischargeability. So after the former spouse/spouse provides evidence that certain debts are within the ambit of § 523(a)(15), the debtor has the burden of proof regarding both subsections. Note that marital debts under § 523(a)(15) are rebuttably presumed nondischargeable.); *Campbell v. Campbell (In re Campbell)*, 198 B.R. 467 (Bankr.D.S.C.1996) (The former spouse/spouse has the burden of proof for the initial requirements of § 523(a)(15). But, the debtor bears the burden of proof concerning the subsections which are affirmative defenses.); *Sterna v. Paneras (In re Paneras)*, 195 B.R. 395 (Bankr.N.D.Ill.1996) (After the former spouse/spouse establishes the requirements set forth in the preamble to § 523(a)(15), the "burden of going forward" shifts to the debtor to prove either Ability to Pay or Detriment. Despite usage of the term "burden of going forward," the burden of proof was actually shifted as evidenced by the court's discussion that despite the general rule that the party objecting to discharge bears the burden of proof this burden is sometimes shifted to the debtor to prove entitlement to discharge.); *McGinnis v. McGinnis (In re*

*McGinnis)*, 194 B.R. 917 (Bankr.N.D.Ala. 1996) (After the former spouse/spouse meets his/her burden of proof by presenting sufficient evidence to invoke the rebuttable presumption of nondischargeability set forth by the language of § 523(a)(15), the burden of proof shifts to the debtor to establish that either subsection to § 523(a)(15) applies.); *Humiston v. Huddelston (In re Huddelston)*, 194 B.R. 681 (Bankr.N.D.Ga.1996) (Once the former spouse/spouse meets the requirements of § 523(a)(15), the burden of going forward shifts to the debtor to prove either the Ability to Pay or Detriment standards.); *Bodily v. Morris (In re Morris)*, 193 B.R. 949 (Bankr.S.D.Cal.1996) (Burden of proof shifts to the debtor to prove Ability to Pay or Detriment after former spouse/spouse meets his/her burden. The burden shift exemplifies the policy that a debtor must sometimes show an entitlement to a discharge.); *Craig v. Craig (In re Craig)*, 196 B.R. 305 (Bankr. E.D.Va.1996) (Upon a showing that a debt is covered by § 523(a)(15), the burden of proof shifts to the debtor to prove either § 523(a)(15)(A) or (B).); *Gamble v. Gamble, (In re Gamble)*, 196 B.R. 54 (Bankr.N.D.Tex. 1996) (Once the former spouse/spouse files a timely dischargeability proceeding, the burden shifts to the debtor to prove either § 523(a)(15)(A) or (B) due to a rebuttable presumption that a property settlement obligation arising from a divorce is nondischargeble.); *Gantz v. Gantz (In re Gantz)*, 192 B.R. 932 (Bankr.N.D.Ill.1996) (Burden shifts to the debtor to prove Ability to Pay or Detriment upon a showing by the former spouse/spouse that § 523(a)(15) applies.); *Simons v. Simons (In re Simons)*, 193 B.R. 48 (Bankr.W.D.Okla.1996) (Once the former spouse/spouse proves § 523(a)(15) applies, a rebuttable presumption is created that any property settlement obligation due to divorce is nonde. To overcome the presumption, the debtor must prove either § 523(a)(15)(A) or (B).); *Smither*, 194 B.R. at 107 (The burden of proof shifts to the debtor to establish an entitlement to discharge under either § 523(a)(15)(A) or (B) upon former spouse/ spouse meeting his/her burden of proof.); *Straub v. Straub (In re Straub)*, 192 B.R. 522 (Bankr.D.N.D.1996) (Once the former spouse/spouse presents sufficient evidence to

meet his/her burden, a rebuttable presumption of nondischargeability of a property settlement obligation is created. Then the debtor is required to prove Ability to Pay or Detriment.); *Belcher v. Owens (In re Owens)*, 191 B.R. 669 (Bankr.E.D.Ky.1996) (The defendant must assert the exceptions which are affirmative defenses. The opinion is unclear as to which party is required to bear the burden of proof, why the Ability to Pay and Detriment standards are affirmative defenses, and the effect of an affirmative defense on burden of proof.); *Slover v. Slover (In re Slover)*, 191 B.R. 886 (Bankr.E.D.Okla. 1996) (The language of § 523(a)(15) establishes a rebuttable presumption that any property settlement obligation arising from a divorce is nondischargeable unless the debtor can prove either standard.); *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760 (Bankr.N.D.Ill. 1996), *aff'd*, 199 B.R. 37 (N.D.Ill.1996) (Although the court chose not to determine who has the burden of proof as opposed to the burden of going forward, it noted that the former spouse/spouse plaintiff must establish the debt is not one excepted under § 523(a)(5) and was incurred as part of a divorce or separation. Once shown, the burden of going forward is shifted to the debtor to meet either the Ability to Pay or Detriment standard. The district court in its affirmance also determined not to decide the burden of proof issue.); *Collins v. Florez (In re Florez)*, 191 B.R. 112 (Bankr.N.D.Ill.1995) (The burden shifts to the debtor to prove either § 523(a)(15)(A) or (B) after the former spouse/spouse presents evidence that § 523(a)(15) applies. No further illumination is provided as to what burden shifts and why.); *Anthony v. Anthony (In re Anthony)*, 190 B.R. 429 (Bankr.N.D.Ala.1995) (The debtor has the burden to overcome a presumption that a debt is nondischargeable by proving either § 523(a)(15)(A) or (B).); *Scott v. Scott (In re Scott)*, 194 B.R. 375 (Bankr. D.S.C.1995) (Once the former spouse/spouse proves that § 523(a)(15) is at issue, the burden shifts to the debtor to prove either § 523(a)(15)(A) or (B).); *Phillips v. Phillips (In re Phillips)*, 187 B.R. 363 (Bankr. M.D.Fla.1995) (The burden shifts to the debtor to prove either the Ability to Pay or Detriment standard because the Code re-

quires the debtor to show an entitlement to the discharge of certain debts. No further explanation or discussion was provided.); *Florio v. Florio (In re Florio)*, 187 B.R. 654 (Bankr.W.D.Mo.1995) (After former spouse/spouse meets the general requirements of § 523(a)(15), the debtor bears the burden of going forward with regards to § 523(a)(15)(A) or (B).); *Silvers v. Silvers (In re Silvers)*, 187 B.R. 648 (Bankr.W.D.Mo.1995) (Once the former spouse/spouse establishes a debt not of the type under § 523(a)(5) and incurred in the course of a dissolution or separation, the burden of going forward shifts to the debtor to prove either subsection to § 523(a)(15).); *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197 (Bankr.S.D.Ohio 1995) (The language of § 523(a)(15) sets forth a rebuttable presumption that a property settlement obligation arising from a divorce is nondischargeable unless the debtor proves either § 523(a)(15)(A) or (B). Once the former spouse/spouse invokes the rebuttable presumption through the presentation of sufficient evidence, the burden of proof shifts to the debtor to prove the subparts to § 523(a)(15).); *Hill v. Hill (In re Hill)*, 184 B.R. 750 (Bankr.N.D.Ill.1995) (The burden regarding the exceptions, which are held to be affirmative defenses, shifts to the debtor.); *Becker v. Becker (In re Becker)*, 185 B.R. 567 (Bankr.W.D.Mo.1995) (The language of § 523(a)(15) sets up a rebuttable presumption that a property settlement obligation arising from a divorce is nondischargeable unless the debtor proves either § 523(a)(15)(A) or (B). Once the presumption takes effect, the burden shifts to the debtor.).

### (A) Rebuttable Presumption Assertion

One basis used to support allocating the burdens of proof for the Detriment and Ability to Pay standards is a rebuttable presumption effects the assignment of the burdens of proof by placing them on a debtor. The argument made is that § 523(a)(15) and the policy behind its enactment create a rebuttable presumption that a debt falling under § 523(a)(15) is nondischargeable. Once the former spouse/spouse timely files a dischargeability proceeding under § 523(a)(15) and establishes a debt not excepted under § 523(a)(5) incurred in the course of a divorce or separation, it is contended this entitles the spouse/former spouse the benefit of a rebuttable presumption which shifts a burden—sometimes called a shifting burden of proof, other times identified as a shifting burden of going forward, and often an unidentified and/or unidentifiable shifting burden—to the debtor to prove either the Ability to Pay or Detriment standard. *See, e.g., Cleveland*, 198 B.R. at 397 (All divorce related obligations are subject to a presumption of nondischargeability under § 523(a)(15). Once § 523(a)(15) is shown to apply, the burden of going forward shifts to the debtor.); *Henson*, 197 B.R. at 302 (A marital debt, under § 523(a)(15), is presumed nondischargeable unless the debtor proves § 523(a)(15)(A) or (B).); *Schmitt*, 197 B.R. at 315 (A marital debt, under § 523(a)(15), is presumed nondischargeable unless the debtor proves § 523(a)(15)(A) or (B).); *Jodoin*, 196 B.R. at 853 (Marital debts within the provisions of § 523(a)(15) are presumed nondischargeable. The presumption may be rebutted if the debtor demonstrates that § 523(a)(15)(A) or (B) applies.); *McGinnis*, 194 B.R. at 920 (Once a rebuttable presumption of nondischargeability is created by evidence that § 523(a)(15) is at issue, the burden of proof shifts to the debtor. Although the term "burden of coming forth" is said to shift to the debtor once the former spouse/spouse meets his/her burden of proof, in actuality and as noted in the opinion, the burden of proof shifts.); *Gamble*, 196 B.R. at 57 (Burden shifts to the debtor to prove either § 523(a)(15)(A) or (B) due to a rebuttable presumption established by the language of § 523(a)(15) that a property settlement obligation arising from a divorce is nondischargeable. It is unclear whether the burden of proof or going forward shifts upon the invocation of the rebuttable presumption.); *Simons*, 193 B.R. at 50 (A rebuttable presumption that any property settlement obligation due to divorce is nondischargeable shifts the burden to the debtor.); *Straub*, 192 B.R. at 527–28 (In this case, the court fails to explain the impact of the rebuttable presumption that a property settlement obligation arising from a divorce is nondis-

chargeable and the rationale for establishing it other than it arose from the language of the Code.); *Slover*, 191 B.R. at 891 (The court does not explain its position other than to state that the language of § 523(a)(15) establishes a rebuttable presumption that any property settlement obligation arising from divorce is nondischargeable or set forth the impact of the presumption on the burden of proof.); *Anthony v. Anthony (In re Anthony)*, 190 B.R. 429 (Bankr.N.D.Ala.1995) (A debt is presumed nondischargeable under § 523(a)(15). The debtor, who has the burden to overcome this presumption, must show that either § 523(a)(15)(A) or (B) applies to convert the debt to a dischargeable one.); *Carroll*, 187 B.R. at 200 (The language of § 523(a)(15) sets forth a rebuttable presumption that a property settlement obligation arising from a divorce is nondischargeable. Once the rebuttable presumption is established, the burden of proof shifts to the debtor to overcome the presumption. No explanation is provided as to what is a presumption, how it is created from statutory language, or exactly why the presumption would affect the burden of proof.); *Becker*, 185 B.R. at 569 (Under § 523(a)(15), a rebuttable presumption that a property settlement obligation due to divorce is nondischargeable is created once it is shown that § 523(a)(15) applies. Upon the creation of the presumption, the burden of proof shifts to the debtor.).

### (B) Affirmative Defense Justification

Another explanation set forth in some of the Majority Group opinions for allocation of the burdens of proof to the debtor is that the Ability to Pay and Detriment standards are affirmative defenses. *See e.g., Campbell*, 198 B.R. at 471 (The burden of proof for § 523(a)(15)(A) and (B) rests with the debtor because both subsections are affirmative defenses.); *Owens*, 191 B.R. at 674 (The standards are labelled as affirmative defenses without explanation.); *King v. Speaks, (In re*

*Speaks)*, 193 B.R. 436 (Bankr.E.D.Va.1995) (Section 523(a)(15)(A) and (B) are affirmative defenses. No further discussion is provided.); *Hill v. Hill*, 184 B.R. at 754 (The rationale construing the exceptions as affirmative defenses appears based on the arguments that the debtor must demonstrate he merits the discharge of a debt under certain subsections in § 523 such as § 523(a)(8) and that the plaintiff lacks motivation to prove the exceptions. Other than the reasons stated, the court did not explain why the exceptions are affirmative defenses. A definition or standard is not set forth in the opinion.) The contention is that the party raising an affirmative defense bears the burden of proof regarding that defense.[9] Therefore, once the plaintiff presents a prima facie case, it is asserted the burden of proof shifts to the debtor to prove the affirmative defenses. *Hill v. Hill*, 184 B.R. at 754 (What burden shifts is not clear. One commentator is cited in *Hill v. Hill* as stating that only the burden of going forward shifts. Whether *Hill v. Hill* followed this position is uncertain from a review of the opinion. Even if it did, the burden of proof for Ability to Pay and Detriment is placed on the debtor in the *Hill v. Hill* case and the courts' particular usage of a shifting burden of going forward is inapposite.)

### (2) Bifurcated Group Rationale

The three courts with reported opinions bifurcating the burden of proof use rationale different from that of the Majority Group to support allocating the Ability to Pay standard to the debtor as an affirmative defense. *Morris v. Morris (In re Morris)*, 197 B.R. 236 (Bankr.N.D.W.Va.1996); *Patterson v. Patterson (In re Patterson)*, 199 B.R. 21 (Bankr.W.D.Ky.1996) (The court appears to adopt *Collins v. Hesson*. However, the opinion is unclear whether the *Hesson* analysis or a modification with respect to the comparative benefit-detriment is applied.); *Collins v.*

9. Although this is now virtually always the allocation of burden of proof for affirmative defenses, this has not always been the case. *See Cent. Vt. Ry. Co. v. White*, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1915). Also, allocation of burden of proof is viewed by various legal scholars as not needing to occur until submission of a case

to the trier of fact. Edward W. McCleary et al., McCormick's Handbook of the Law of Evidence § 336 (2d ed. 1972) (The burden of proof does not need to be allocated until it is time for a decision.) Thus, the general rule may be changed by other factors once a trial reaches submission to the trier of fact.

*Hesson (In re Hesson)*, 190 B.R. 229 (Bankr. D.Md.1995). The *Hesson* opinion quantifies the Ability to Pay standard as an affirmative defense based on the assertion that the former spouse/spouse has no motivation to prove that a debtor does not have the requisite ability to pay. It is also asserted that the debtor is required to prove and plead the Ability to Pay as the one most able to produce evidence. However, the *Hesson* and *Morris* opinions do not address the fact that a former spouse/spouse assigned the burden of proof for the Ability to Pay has at least one significant reason for placing into evidence factors that demonstrate the debtor's ability to pay. The failure to present sufficient evidence to shift the burden of going forward on Ability to Pay will result in the discharge of the debt! In addition to the *Hesson* rationale expressly adopted by the *Morris* court, the *Morris* opinion evidences the courts expressed agreement with one of the Minority Group's opinion's, *Butler*, position that "adequate grounds do not exist to justify a shift in the burden of proof from the creditor/plaintiff to the debtor ..." *Morris*, 197 B.R. at 243. Despite its expressed agreement with *Butler* on this aspect of the burden of proof, the court in *Morris* justifies overlooking this and allocates the burden of proof on the Ability to Pay standard to the debtor because it is "cumbersome, at best" to require the plaintiff/creditor to prove Ability to Pay. *Morris*, 197 B.R. at 243.

### (3) Minority Group

Under the Minority Group, the former spouse/spouse must prove all elements of § 523(a)(15) including the Ability to Pay and Detriment standards. *Willey v. Willey (In re Willey)*, 198 B.R. 1007 (Bankr.S.D.Fla. 1996); *Adie v. Adie (In re Adie)*, 197 B.R. 8, 9 n. 1 (Bankr.D.N.H.1996) (Burden of persuasion is on the creditor seeking a nondischargeability determination under § 523(a)(15). The court cites and follows the *Butler* opinion without any discussion.); *Dressler v. Dressler, (In re Dressler)*, 194 B.R. 290 (Bankr.D.R.I.1996); *Kessler v. Butler (In re Butler)*, 186 B.R. 371 (Bankr.D.Vt. 1995); *see also Woodworth v. Woodworth (In re Woodworth)*, 187 B.R. 174 (Bankr. N.D.Ohio 1995) (The court relies on *Grogan*

*v. Garner* as requiring the plaintiff to bear the burden of proof on the Ability to Pay and Detriment standards. No other explanation or reason is presented.). Based on an application of *Grogan v. Garner*, the *Butler* opinion adheres to the general rule that the objecting creditor bears both burdens and no presumptions apply. No explanation is given for finding no presumptions. The *Butler* court disagrees with the line of cases within the Majority Group which either shift or allocate burdens of proof to the debtor due to an analogy to § 523(a)(8). The opinion is based in part on the fact that the two sections differ procedurally and substantively. The procedural difference is due to the fact that the former spouse/spouse typically requests a declaration of nondischargeability under § 523(a)(15). In contrast and under § 523(a)(8), the debtor is generally the party seeking the discharge of the debt. The *Butler* opinion also postulates that substantively the language of the two subsections differ. Under § 523(a)(8)(B), one must establish proof of undue hardship to the debtor and the debtor's dependents if the debt is not to be discharged. Under § 523(a)(15), one must make a comparative showing of benefit-detriment from a discharge. The *Butler* opinion concludes that the former spouse/spouse is the most logical person to plead and prove (i) the comparative detrimental effects of the discharge, and (ii) the ability to pay.

The *Butler* court also looks at § 523(c) to find one dissimilarity between § 523(a)(8) and § 523(a)(15). A timely action must be filed under § 523(a)(15) to prevent a discharge. To the contrary, § 523(a)(8) is self executing. Finally, the *Butler* court notes that it is illogical to place the burden differently in § 523(a)(5) and § 523(a)(15) when these two sections are alternate theories for creditors to argue nondischargeability.

The analysis set forth in the *Butler* opinion comparing § 523(a)(5) to § 523(a)(15) and its distinguishing of the Majority Group's rationale of comparing § 523(a)(8)'s structure to that of § 523(a)(15) rests on a critical assumption that current case law allocating the burdens of proof under § 523(a)(5)—including § 523(a)(5)(A) & (B)—and § 523(a)(8)—

including the burden of proof on the plaintiff-creditor under § 523(a)(8)(A)—is correct. As is discussed *infra*, this assumption may not be valid and requires reconsideration of the reasons for which the burdens of proof have been allocated by case law for these other subsections of § 523(a).

Despite this assumption problem, the Minority Group opinions and in particular *Butler* evidence serious consideration by each's respective author of the apparent inconsistencies within the Majority Group's opinions. They also highlight that many of the authors of opinions in the Majority Group and Bifurcated Group have assumed and relied on the perceived correctness of the allocations of burdens of proof under other subsections of § 523(a).

### (4) Section 523(a)(15) Case Law Summation

The cases addressing burdens of proof in the § 523(a)(15) context have utilized different reasons to justify assigning burdens of proof. The reported opinions are especially difficult to interpret because many courts (i) use the term burden of proof as meaning both the burden of proof *and* the burden of going forward and/or (ii) fail to delineate which burden is being discussed.[10] Although some of the opinions evidence an understanding of the difference between burden of proof and burden of going forward and state that the burden of proof for the § 523(a)(15) exception to discharge does not shift from the former spouse/spouse to the debtor, close analysis of these opinions reveals many courts either shift the burden of proof—not the burden of going forward—to the debtor or *assume only one burden of proof exists within a case*. In other words, what is done in these cases disproves what is said. *Silvers*, 187 B.R. at 649, (Burden of proof on party seeking nondischargeability, but bur-

den of going forward for Ability to Pay and Detriment on debtor. However, the former spouse/spouse is not required, as part of its case in chief, to present evidence of Ability to Pay and Detriment.); *Florio*, 187 B.R. at 656–657 (Burden of going forward for Ability to Pay and Detriment shifts to debtor, but application of preponderance of evidence standard on debtor for Ability to Pay and Detriment effectively places the burden of proof on the debtor.); *Huddelston*, 194 B.R. at 685–86 (Holds the burden of going forward for Ability to Pay and Detriment shifts to debtor and cites *Florio, Silvers, Hill v. Hill*, 184 B.R. at 753–754, *Gantz*, 192 B.R. at 935, *Phillips*, 187 B.R. at 368, and *Carroll*, 187 B.R. at 200. As set forth above, *Florio* and *Silvers* do not practice what is stated and the burden of proof is in reality allocated to the debtor for § 523(a)(15)(A) & (B). The *Gantz* opinion, under the heading "Burden of Proof," holds this burden shifts. *Gantz*, 192 B.R. at 935. The *Hill v. Hill* opinion places the burden of proof for Ability to Pay and Detriment on the debtor by making these affirmative defenses. *Hill v. Hill*, 184 B.R. at 754. Finally, the *Carroll* and *Phillips* opinions place the burden of proof on the debtor for Ability to Pay and Detriment. *Carroll*, 187 B.R. at 200; *Phillips*, 187 B.R. at 368.); *Sterna v. Paneras, (In re Paneras)*, 195 B.R. 395 (Bankr.N.D.Ill.1996) (Relies on *Silvers, Phillips*, and *Hill v. Hill* analysis.); *McGinnis v. McGinnis (In re McGinnis)*, 194 B.R. 917 (Bankr.N.D.Ala.1996) (Uses a rebuttable presumption and *Silvers, Florio, Huddelston* "shifting of going forward" language, but places burden of proof for § 523(a)(15)(A) & (B) on debtor.) [11]

What these opinions demonstrate is that a body of case law is developing based on prior holdings which either (i) do not hold as cited, (ii) state what is cited, yet when analyzed do

---

10. In some opinions it is difficult to determine who bears the burden of proof because the court did not squarely address the issue. *Gamble*, 196 B.R. at 57 (Unspecified burden); *Simons*, 193 B.R. at 50 (Unspecified burden); *Straub*, 192 B.R. at 527–28 (Unspecified burden); *Owens*, 191 B.R. at 672–74 (Unspecified burden); *Slover*, 191 B.R. at 891 (Unspecified burden); *Anthony*, 190 B.R. at 432 (Unspecified burden); *Scott*, 194 B.R. at 381 (Unspecified burden); *Phillips*, 187 B.R. at 368 (Unspecified burden); *Hill v. Hill*, 184 B.R. at 753 (Unspecified burden).

11. *But see Campbell*, 198 B.R. at 471–72 (Multiple burdens of proof are at play. One is on the former spouse/spouse to meet the requirements of the preamble to § 523(a)(15), and the other is placed on the debtor to establish either affirmative defense: § 523(a)(15)(A) and (B).)

not do what is stated, and/or (iii) accept and utilize reasons which place the burdens of proof for Ability to Pay and Detriment on a debtor without sufficient consideration of the correctness of the reasons. The problem is apparent on analysis of the published opinions. They evidence the tendency to adopt existing precedent without analyzing the stance taken by the prior courts, distinguishing the term burden of proof, setting forth the reasons for finding a rebuttable presumption or affirmative defense, and noting the effect of a presumption on the burden of proof. As this body of case law increases, precedent is being established without sufficient inquiry into the justifications used for allocation of the burdens of proof for Ability to Pay and Detriment in the prior cases and whether what is stated is what is done.

### (b) The Bankruptcy Code

### (1) No Expressed Allocation

A review of the Bankruptcy Code shows that Congress is capable of allocating and has expressly set forth the allocation of burdens of proof. For stay relief under § 11 U.S.C. § 362, the party requesting relief must prove the debtor's equity in the property at issue. The opposing party is given everything else. 11 U.S.C. § 362(g). Separate burdens of proof are provided for in motions for the use, sale, or lease of property. To establish entitlement to use, sell, or lease property, the trustee is required to establish adequate protection and the entity asserting an interest in the property to be used, sold, or leased must prove the validity, priority, or extent of its interest. 11 U.S.C. § 363(o). Congress did not expressly allocate the burdens of proof for § 523(a)(15)(A) & (B).

### (2) Treatment Under Other Subparts of § 523(a).

Section 523(a)(15)'s silence needs to be considered from the context of the other subsections of § 523(a). *See Grogan*, 498 U.S. at 286–87, 111 S.Ct. at 659–60. For the majority of § 523(a) subsections, the reported opinions demonstrate that courts overwhelmingly place the burden of proof on the party opposing discharge of a debt. The

following is a summary of selected reported opinions in which the burdens of proof under other § 523(a) subsections has been discussed.

### (A) Burden on Party Seeking Exception to Discharge

| Subparts of 11 U.S.C. § 523(a) | Selected Case Law |
|---|---|
| § 523(a)(1)(A) | Smith v. United States (In re Smith), 179 B.R. 66, 68 (Bankr. N.D.Ohio 1995), aff'd, 186 B.R. 411 (N.D.Ohio 1995) (The I.R.S. as the party seeking an exception to discharge bears the burden of proof on the issue of nondischargeability.); |
| | Hartford Casualty Ins., Co. v. Fields (In re Fields), 926 F.2d 501, 503 (5th Cir.1991) (Party seeking an exception to discharge bears the burden of proof as to nondischargeability.). |
| § 523(a)(1)(B) | Smith v. United States (In re Smith), 179 B.R. 66, 68 (Bankr. N.D.Ohio 1995), aff'd, 186 B.R. 411 (N.D.Ohio 1995) (The I.R.S. as the party seeking an exception to discharge bears the burden of proof on the issue of nondischargeability.); |
| | Gless v. United States (In re Gless), 179 B.R. 646, 648 (Bankr. D.Neb.1995) (The objecting party has the burden of proof.). |
| § 523(a)(1)(C) | Dalton v. I.R.S., 77 F.3d 1297, 1302 (10th Cir.1996) (Government as the entity seeking an exception to discharge bears the burden to prove taxes are nondischargeable.); |
| | Bruner v. United States (In re Bruner), 55 F.3d 195, 197 (5th Cir.1995) (The government as the entity seeking an exception to discharge bears the burden of proof.); |
| | Levinson v. United States, 969 F.2d 260, 265 (7th Cir.1992) (Government as the entity seeking an exception to discharge has the burden.). |
| § 523(a)(2) | Bethpage Fed. Credit Union v. Furio (In re Furio), 77 F.3d 622, 624 (2nd Cir.1996) (Creditor seeking exception must prove each element under § 523(a)(2).); |
| | Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d |

134, 136 (1st Cir.1992) (Burden of persuasion is on the party contesting the discharge of a particular debt under § 523.);

*Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490, 491 (6th Cir.1986) (The party seeking an exception from discharge has the burden of proof.);

*Driggs v. Black (In re Black),* 787 F.2d 503, 505 (10th Cir.1986) (The burden of proving that a debt is within a statutory exception is on the party opposing discharge.).

§ 523(a)(2)(A)   *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1292 (5th Cir.1995) (The creditor seeking exception must prove the debt is nondischargeable.);

*Century 21 Balfour Real Estate v. Menna (In re Menna),* 16 F.3d 7, 9 (1st Cir.1994) (The party alleging nondischargeability must show its claim falls within an exception enumerated in § 523(a).);

*Goldberg Sec., Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 525 (7th Cir.1992) (The objecting creditor has the burden to prove an exception to discharge.);

*Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir. 1986) (The creditor seeking nondischargeability has the burden to prove the exception.).

§ 523(a)(2)(B)   *Norris v. First Nat'l. Bank in Luling (In re Norris),* 70 F.3d 27, 29 (5th Cir.1995) (The creditor seeking nondischargeability must prove all the elements of § 523(a)(2)(B));

*In re Sheridan,* 57 F.3d 627, 633 (7th Cir.1995) (The creditor seeking nondischargeability must prove all the elements.);

*Ins. Co. of N.A. v. Cohn (In re Cohn),* 54 F.3d 1108, 1114 (3rd Cir.1995) (The burden of proving that a debt is nondischargeable under § 523(a) is on the creditor.);

*Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 304 (11th Cir.1994) (The objecting creditor must prove each element.).

§ 523(a)(3)(B)   *Waugh v. Eldridge,* 172 B.R. 31, 34 (Bankr.E.D.Ark.1994), *rev'd on*

other grounds, *198 B.R. 545 (E.D.Ark.1995) (Creditor seeking nondischargeability must satisfy the elements of § 523(a)(3)(B).);*

*Haga v. Nat'l. Union Fire Ins. Co. of Pittsburgh, Pa. (In re Haga),* 131 B.R. 320, 323 (Bankr. W.D.Tex.1991) (Creditor seeking nondischargeability must prove § 523(a)(3).).

§ 523(a)(4)   *Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993) (The creditor opposing discharge must prove that the debt is within an exception to discharge.);

*Belfry v. Cardozo (In re Belfry),* 862 F.2d 661, 662 (8th Cir.1988) (The party opposing discharge has the burden to prove that a debt is within a statutory exception.);

*Driggs,* 787 F.2d at 505 (The burden of proving that a debt is within a statutory exception is on the party opposing discharge.);

*Teichman v. Teichman (In re Teichman),* 774 F.2d 1395, 1398 (9th Cir.1985) (The party opposing discharge must prove the elements of § 523(a)(4).).

§ 523(a)(5)(A)   *Pekin Ins. v. Budka (In re Budka),* 135 B.R. 338, 341 (Bankr. N.D.Ind.1992) (The burden of proof is on the party objecting to discharge.).

§ 523(a)(5)(B)   *Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 723 (10th Cir.1993) (The party seeking to hold the debt nondischargeable bears the burden of proving the exception.);

*Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 761 (3rd Cir. 1990) (The party objecting to discharge has the burden of proving nondischargeability.);

*Benich v. Benich (In re Benich),* 811 F.2d 943, 945 (5th Cir.1987) (The party asserting that the debt is nondischargeable has the burden to prove it is excepted from discharge.);

*Long v. West (In re Long),* 794 F.2d 928, 930 (4th Cir.1986) (The

party opposing discharge has the burden of establishing the elements of § 523(a)(5).).

§ 523(a)(6)    *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir.1994) (The party alleging nondischargeability must show its claim falls within an exception enumerated in § 523(a).);

*Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir.1993) (The creditor opposing discharge must prove that a debt falls within an exception to discharge.);

*Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 525 (7th Cir.1992) (The objecting creditor has the burden to prove the exception to discharge.);

*Hoskins v. Yanks (In re Yanks)*, 931 F.2d 42, 43 (11th Cir.1991) (The party seeking to except the debt under § 523(a)(6) must prove the willfulness and maliciousness of the act.);

*Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir.1991) (The creditor asserting nondischargeability must prove the elements of § 523(a)(6).);

*C.I.T. Fin. Serv., Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989) (The creditor objecting to discharge must prove the elements.);

*Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988) (The creditor asserting nondischargeability must prove the elements of § 523(a)(6).).

§ 523(a)(7)    *Attorney Registration & Disciplinary Comm'n v. Betts (In re Betts)*, 149 B.R. 891, 895 (Bankr. N.D.Ill.1993) (The party seeking to establish an exception to discharge of a debt has the burden of proof.).

§ 523(a)(9)    *Alge v. Mellott (In re Mellott)*, 187 B.R. 578, 582 (Bankr.N.D.Ohio 1995) (The movant seeking the exception to discharge bears the burden of proof.);

*Williams v. Hart (In re Hart)*, 83 B.R. 840, 842 (Bankr.M.D.Ga.

1987) (The burden of proof is on the party objecting to the discharge of the debt.);

*Allstate Ins. Co. v. Humphrey (In re Humphrey)*, 102 B.R. 629, 631 (Bankr.S.D.Ohio 1989) (The creditor seeking the exception to discharge bears the burden.);

*Whitson v. Middleton (In re Middleton)*, 100 B.R. 814, 817 (Bankr. E.D.Va.1988), *aff'd*, 898 F.2d 950 (4th Cir.1990) (The party seeking to except the debt from discharge is allocated the burden of proof.).

## (B) Burden Placing Disputed

**Subparts of 11        Selected Case Law
U.S.C. § 523(a)**

§ 523(a)(2)(C)    *Carroll v. Vernon (In re Vernon)*, 192 B.R. 165, 170 (Bankr.N.D.Ill. 1996) (The creditor-plaintiff has the burden to establish that the debtor's obligation or any part of it falls under § 523(a)(2)(C) to obtain the benefit of the statutory presumption of nondischargeability. The presumption does not shift the burden of proof. The ultimate risk of nonpersuasion remains on the creditor-plaintiff.);

*FCC Nat'l Bank v. Orecchio (In re Orecchio)*, 109 B.R. 285, 288 (Bankr.S.D.Ohio 1989) (The creditor bears the burden of proof. Once the presumption is invoked, the debtor is required to rebut it.);

*J.C. Penney Co. v. Leaird (In re Leaird)*, 106 B.R. 177, 179 (Bankr. W.D.Wis.1989) (The plaintiff-creditor has the burden to establish a presumption of nondischargeability. Once the presumption is established, the plaintiff's burden of production but not proof is satisfied.);

*Norwest Fin. Consumer Discount Co. v. Koch (In re Koch)*, 83 B.R. 898, 902 (Bankr.E.D.Pa.1988) (The burden of proof is on the creditor to show that § 523(a)(2)(C) applies. The presumption, when established, does not shift the burden of proof. It only shifts the burden of production to the debtor.);

*contra J.C. Penney Co. v. Herran (In re Herran)*, 66 B.R. 323, 325

(Bankr.S.D.Fla.1986) (Once the plaintiff-creditor establishes the presumption of nondischargeability under § 523(a)(2)(C), the burden of proof shifts in applying § 523(a)(2)(A).).

§ 523(a)(3)(A) *In re Hicks,* 184 B.R. 954, 959 (Bankr.C.D.Cal.1995) (The burden of proof is on the creditor.);

*contra United States v. Bridges,* 894 F.2d 108, 111 (5th Cir.1990) (The burden of proof is on the debtor to show the creditor had notice or actual knowledge under § 523(a)(3).);

*Worthing v. Conn. Nat'l. Bank (In re Worthing),* 24 B.R. 774, 776 (Bankr.D.Conn.1982) (The burden of proof is on the debtor to show that the creditor had notice or actual knowledge.).

Note that the provisions where courts are divided on allocations of burdens of proof arise when a subpart of a subsection of § 523(a) is involved or an exception within an exception is set forth within a subsection of § 523(a). This is just the case law divergence which exists in the § 523(a)(15) context. In none of these instances is there a dispute on allocation of the burdens of proof for the subsections of § 523(a) set forth before the subpart or before the exception within an exception provision.

### (C) Splitting the Burden Allocation

For one section, 11 U.S.C. § 523(a)(8), the student loan exception, the opinions have been relatively consistent on splitting the allocation of the burdens of proof for its subparts. The creditor seeking the exception to discharge is assigned the burden of proof for whether the loan is of the type within § 523(a)(8) plus § 523(a)(8)(A), which currently provides for the discharge of a debt that first became due over seven years before the bankruptcy petition was filed. *Conn. Student Loan Found. v. Keenan (In re Keenan),* 53 B.R. 913, 916 (Bankr.D.Conn. 1985) (Under § 523(a)(8)(A), the burden of proof is on the creditor.); *Bd. of Trustees v. Wright (In re Wright),* 7 B.R. 197, 200

(Bankr.N.D.Ala.1980) (The burden is on the creditor to prove § 523(a)(8)(A).) The debtor is given the burden of proof for § 523(a)(8)(B) to demonstrate that nondischarge of the debt would cause undue hardship on the debtor and his/her dependents. *See e.g., Woodcock v. Chemical Bank, (In re Woodcock),* 45 F.3d 363, 367 (10th Cir.1995) (Debtor bears the burden to demonstrate undue hardship); *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 301 (3rd Cir.1995) (Debtor bears the burden to demonstrate undue hardship.); *Gilchrist v. Dept. of Educ.,* 865 F.2d 1329 (D.C.Cir.1988) (Debtor must prove undue hardship.). Again, it is the subparts of § 523(a)(8) for which the courts allocate the burdens of proof differently.

### (c) Structure of § 523(a)

A review of the case law under § 523(a) reveals that the burdens of proof under § 523(a)(5) and § 523(a)(15) are allocated differently. The former spouse/spouse, as the party opposing discharge, has by case law precedent been required to bear as his/her burden of proof all subportions of § 523(a)(5). Under § 523(a)(15), the Majority Group, the Bifurcated Group, and the Minority Group place the burden of proof on the former spouse/spouse to establish that a debt exists which is a part of a divorce, separation, maintenance agreement/order which is not alimony, maintenance, or support. However, the consistency of the § 523(a)(15) case law stops at this point.

No clear, consistent reasoning is set forth in the opinions for why these subparts of § 523(a)—§ 523(a)(5) and § 523(a)(15)—are treated differently for burden of proof purposes. Both § 523(a)(5) and § 523(a)(15) are similar in structure. Section 523(a)(5) specifies nondischarge of alimony, maintenance, or support

but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security

Act [42 U.S.C. § 602(a)(26)], or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

Section 523(a)(15) excepts from discharge nonalimony, nonmaintenance, and nonsupport marital debts

unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

Should the § 523(a)(5) phrase "but not to the extent that . . ." leave the burden of proof on the former spouse/spouse seeking nondischarge when the "unless . . ." structure of § 523(a)(15) is used by some courts to put the burdens of proof for Ability to Pay and Detriment on the debtor? Each sets forth the requirements that must be met for a debt to be excepted from discharge. Each has two subparts which contain exceptions or qualifications to the exception to discharge of debts.

Due to the structural similarity of § 523(a)(5) and § 523(a)(15) and no delineated reason for unequal assignment of burdens of proof, a valid issue exists regarding the correctness of the Majority Group's comparison of the structure of § 523(a)(15) with § 523(a)(8)(B)'s undue hardship provision to justify allocation of the burdens of proof to the debtor for § 523(a)(15)(A) & (B). Excluding the nonstructural reasons utilized to

place the burdens of proof for Ability to Pay and Detriment on the debtor—affirmative defenses, presumptions, exceptions, ability and motivation to prove the Ability to Pay and Detriment standards, the courts which place the burdens of proof under § 523(a)(15)(A) & (B) on the debtor do not address the structural similarity of other subparts of § 523(a), e.g. § 523(a)(3), § 523(a)(5), and § 523(a)(8)(A), to § 523(a)(15) when they justify placing the burdens of proof on the debtor by the structural similarity of § 523(a)(8)(B) to § 523(a)(15)(A) & (B). Indeed, these cases also ignore or overlook the structural likeness of § 523(a)(8)(A) which courts have held places the burden of proof for this subpart on the creditor seeking the exception to discharge. Why should case law utilize what is an "exception within an exception" to discharge under § 523(a)(8)(B) to support allocating the burdens of proof for § 523(a)(15)(A) and (B) to a debtor when similar "exceptions within exceptions" to discharge under, among other subparts, § 523(a)(3), § 523(a)(5), and § 523(a)(8)(A) are not similarly applied? Furthermore, the Majority Group, Bifurcated Group, and Minority Group opinions implicitly suppose and accept the correctness of prior holdings allocating the burdens of proof under these subparts of § 523(a).

This Court believes that it is this assumption of correctness of the allocation of burdens of proof implicit in the opinions of the various bankruptcy courts which is one of the reasons for the confusion and conflict caused in allocating burdens of proof under 11 U.S.C. § 523(a)(15). Once one recognizes that the assumption of the correctness of allocation of burdens of proof for other subparts of § 523(a) may be incorrect, the strength of the structural similarity arguments used in various opinions is, if not dispatched, vitiated by this inconsistency. Only when consonance of allocations of burdens of proof for subparts of § 523(a) is achieved will the structural argument achieve the proper weight to which it may be entitled.

### (d) Silence Revisited

Since Congress has explicitly apportioned burdens of proof in, *e.g.,* § 362 and § 363, *Grogan* arguably supports the proposition that Congress' silence in § 523(a) and

§ 523(a)(15) requires a uniform allocation of burdens of proof throughout § 523(a). When it made a determination as to the proper level for the standard of proof under § 523(a), the Supreme Court noted that § 523(a)'s silence and the legislative history "are inconsistent with the view that Congress intended to require a special heightened standard of proof [under one part of § 523(a) which is not utilized in other subparts]." *Grogan*, 498 U.S. at 286, 111 S.Ct. at 659. The Court's opinion further sets forth that:

> [o]ur conviction that Congress intended the preponderance standard to apply to the discharge exceptions is reinforced by the structure of § 523(a), which groups together in the same subsection a variety of exceptions without any indication that any particular exception is subject to a special standard of proof. *The omission of any suggestion that different exemptions have different burdens of proof implies that the legislators intended the same standard to govern the nondischargeability under § 523(a)(2) of fraud claims and, for example, the nondischargeability under § 523(a)(5) of claims for child support and alimony.* Because it seems clear that a preponderance of the evidence is sufficient to establish the nondischargeability of some of the types of claims covered by § 523(a), it is fair to infer that Congress intended the ordinary preponderance standard to govern the applicability of all the discharge exceptions. [Emphasis added.]

*Grogan*, 498 U.S. at 287–88, 111 S.Ct. at 659–60. *See also Haas v. I.R.S. (In re Haas)*, 48 F.3d 1153, 1156 (11th Cir.1995) (Where Congress knows how to speak and chooses not to so do, its silence is controlling. In its interpretation of § 523(a)(1)(C), the Eleventh Circuit found it illustrative that Congress knew how to distinguish between an evasion of tax and an evasion of payment of a tax under I.R.C. § 7201 which Congress was aware of when it drafted § 523(a)(1)(C).) In its most literal sense, *Grogan* supports the argument for consistency in the allocation of the burdens of proof under 11 U.S.C. § 523(a) including exceptions to the exceptions to discharge set forth in various subparts of its subsections. *See Grogan*, 498 U.S. at 286–88, 111 S.Ct. at 659–60.

Coupled with the statute's silence is the reported legislative history for § 523(a)(15) which is also silent on the burden of proof issue. H.R.Rep. No. 835, 103d Cong., 2nd Sess. 54 (1994). It does not contain the words or even allude to presumptions, affirmative defenses, burdens of proof, burdens of persuasion, burdens of going forward, inferences, exceptions in the allocation of burden of proof sense, or ability and motivation to prove the Ability to Pay or Detriment standards. This is the reported legislative history:

> Subsection (e) adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance, or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such 'hold harmless' and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it

could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the non-debtor spouse that outweighs the debtor's need for a fresh start.

The new exception to discharge, like the exceptions under Bankruptcy Code section 523(a)(2), (4), and (6) must be raised in an adversary proceeding during the bankruptcy case within the time permitted by the Federal Rules of Bankruptcy Procedure. Otherwise the debt in question is discharged. The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation owed to the spouse or former spouse—an obligation to hold the spouse or former spouse harmless—which is within the scope of this section.

Consequently, those opinions which allocate the burdens of proof on a debtor for the Ability to Pay standard and the Detriment standard based on the statute's failure to expressly state who is to prove what coupled with its legislative history do *not* have the support claimed for such an allocation. The legislative history does not evidence consideration of the issue. Furthermore the allocation of Ability to Pay and Detriment to the debtor—as to the former spouse/spouse—based on the various and different reasons and rationale as set forth in the reported opinions increases and perpetuates the incongruities in assigning burdens of proof under § 523(a) contrary to *Grogan's* view of consonance: burdens of proof for sub-subparts of § 523(a) are being allocated at variance with others, at least some of which contain an "exception within an exception" to discharge.

### (e) Common Law or Changing and Rechanging the Status Quo of Discharge

Added to a review of the statute, its structure, and applicable legislative history for determination of allocation of burdens of proof should be an analysis of common law principles governing burden of proof allocation. One is the party pleading a fact carries the burden of proof. Typically, the plaintiff is assigned the burden of proof for most facts because he/she is the one seeking to change the status quo. Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 337 (2d ed. 1972).

In a § 523(a)(15) case, the former spouse/spouse creditor is the one seeking to change the status quo of dischargeable. The requirements of § 523(a)(15) excluding the Ability to Pay and Detriment standards must be proved to change the status of dischargeability of a marital debt. Then § 523(a)(15)(A) and (B) require proof that once the status quo of dischargeability is altered to that of excepted from discharge, returning to the status of dischargeability may occur only on the meeting of the Ability to Pay or the Detriment standard.

Recognition of what subparts (A) and (B) of § 523(a)(15) do which is different from the rest of § 523(a)(15)—if proved they return the status quo to that which existed but for § 523(a)—compels the conclusion that this common law principle should not be applied to statutory provisions such as § 523(a)(15), including its subparts set forth in (A) and (B), without careful analysis of the impact of its application to all subparts. Application of this rule requires a person seeking an exception to discharge to prove enough to support the exception under § 523(a)(15)—all of § 523(a)(15) up to the "unless...." Once this is proved, this changes the status quo. Then, the party seeking to alter the newly established status should be required to prove those facts necessary to revert the status back to dischargeable. Use of the changing of the status quo analysis for allocation purposes moreover demonstrates a comparative structural analytical method for determining allocations of burdens of proof under § 523(a)'s subsections.

From this common law context, other factors should also be assessed when making the assignment of burdens of proof. One is the doctrine that a party with peculiar knowledge of facts relevant to an issue has the burden to prove this issue. This doctrine should not be given too much emphasis. One is often required to plead and prove matters to which the opposing party has superior access to evidence. The expansion of pretrial civil discovery under the Fed.R.Civ.P. has also diminished the importance of this factor. Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 337 n. 19 (2d ed. 1972); Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex. L.Rev. 33 (1934) (Although superior access to evidence is a factor for courts to consider, it fails to furnish a workable rule.). *But see* 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5122 (1977).

Yet other factors are policy, probability, convenience, and fairness. The policy factor requires one to examine the impact of the allocation on policy concerns. The probability factor requires one to determine the probable state of facts at issue and to place the burden on the party disputing the probable facts or stating the unusual. Convenience and fairness entail consideration of access to proof and surprise to a party. *See* 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5122 (1977) (The burden of proof is established in accordance with three factors: policy, probability, and possession of proof.); Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 337 (2d ed. 1972) (Consider judicial estimate of the probabilities, fairness, and convenience.); Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex. L.Rev. 33, 37 (1934) (The real determination should rest on considerations of fairness, policy, and convenience.)

In general, the allocation of the burdens of proof is not premised on one principle. Rather, it depends on the weight given the various factors of policy, probability, convenience, and fairness. Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 337 (2d ed. 1972). The consistent approach taken by the commentators and secondary authority is that the allocation should be based on policy factors, probability of a state of facts, convenience or possession of evidence/proof, and fairness. None of the reported cases addressing burden of proof allocations under § 523(a)(15)(A) & (B) evidence consideration and the weighing of *all* of these factors to arrive at an appropriate allocation of the burdens of proof.

## IV. Further Analysis

### (i) The General Rule of No Shifting Burdens of Proof

Since a significant number of opinions placing the burdens of proof for Ability to Pay and Detriment on a debtor use the terminology of shifting burdens of proof and many either confuse burden of proof for burden of going forward or fail to distinguish the difference, recall of the general, almost always applied rule is mandated. It is that a burden of proof, once assigned, does *not* shift. *Maher Terminals, Inc.*, 512 U.S. at ——, 114 S.Ct. at 2255; *Simpson*, 770 F.2d at 503; Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 336 (2d ed. 1972).[12]

The confusion on this issue and what burden does, if at all, shift is displayed by the opinions in these cases: *Cleveland*, 198 B.R. at 397 (Burden of going forward shifts.); *Henson*, 197 B.R. at 302 (Burden of proof shifts.); *Schmitt*, 197 B.R. at 315 (Burden of proof shifts.); *Campbell*, 198 B.R. at 471–72 (Multiple burdens of proof exist.); *Paneras*, 195 B.R. at 403 (The "burden of going forward" shifts to the debtor to prove either Ability to Pay or Detriment. Despite usage of the term "burden of going forward," the burden of proof was actually shifted as evidenced by the Court's discussion that despite the general rule that the party objecting to discharge bears the burden of proof this burden is sometimes shifted to the debtor to prove entitlement to discharge.); *McGinnis*,

---

**12.** *But see* Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex.L.Rev. 33, 42 (1934) (The general rule is too broad. The burden of proof actually shifts in a few situations not applicable in the § 523(a)(15) context.)

194 B.R. at 920 (Due to ambiguous phraseology, it is difficult to determine which burden shifts. Initially, it is stated that the burden of going forward shifts to the debtor. Then it is noted that the burden of proof shifts.); *Huddelston,* 194 B.R. at 686 (Burden of going forward.); *Morris,* 193 B.R. at 952 (Burden of proof.); *Craig,* 196 B.R. at 308 (Burden of proof shifts.); *Jodoin,* 196 B.R. at 853 (Burden does not appear to shift, rather the debtor has the burden of proof for the subsections); *Gamble,* 196 B.R. at 57 (Unspecified burden); *Gantz,* 192 B.R. at 936 (Burden of proof.); *Simons,* 193 B.R. at 50 (Unspecified burden.); *Smither,* 194 B.R. at 107 (Burden of proof.); *Straub,* 192 B.R. at 527–28 (Unspecified burden); *Owens,* 191 B.R. at 672–74 (Unspecified burden); *Slover,* 191 B.R. at 891 (Unspecified burden.); *Florez,* 191 B.R. at 115 (Burden of proof); *Anthony,* 190 B.R. at 432 (Unspecified burden); *Scott,* 194 B.R. at 381 (Unspecified burden); *Phillips,* 187 B.R. at 368 (Unspecified burden); *Florio,* 187 B.R. at 657 (Burden of going forward); *Silvers,* 187 B.R. at 649 (Burden of going forward); *Carroll,* 187 B.R. at 199 (Burden of proof); *Hill v. Hill,* 184 B.R. at 753 (Unspecified Burden); *Becker,* 185 B.R. at 569 (Burden of proof); *see also* Judge Dee McGarity, Family Law Provisions In the Bankruptcy Act of 1984, Bankr.Ct.Dec. (CRR) Weekly News & Comment, Vol. 27, A1 (May 16, 1995) (Burden of production.)

Unlike a burden of proof, a burden of going forward with respect to those issues for which one party bears the burden of proof can switch between the parties. After a plaintiff presents evidence to a degree sufficient to support the existence of the state of facts asserted, the burden of going forward travels to the opposing party who must submit sufficient rebuttal evidence to dissuade the trier of fact of the state of facts asserted by the party assigned the burden of proof. *Maher Terminals, Inc.,* 512 U.S. at ——, 114 S.Ct. at 2255; *Simpson,* 770 F.2d at 503; Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 336 (2d ed. 1972); Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex.L.Rev. 33, 44 (1934). If sufficient evidence is presented by the opposing party, the burden of going forward returns to the original party. *Simpson,* 770 F.2d at 503. Because cases which shift the burden of proof disregard a basic tenet of law, a shifting burden of proof rationale to place § 523(a)(15)'s Ability to Pay and Detriment standards on a debtor is incorrect. As a result, those opinions which place the burden of proof for Ability to Pay and Detriment on a debtor by use of a shifting burden of proof are not based on a proper legal standard.

### (ii) Rebuttable Presumptions

A number of the opinions use a rebuttable presumption to allocate burdens of proof. A presumption is a device by which proof of one fact (the basic fact) is taken for certain purposes as proof of a second fact (the presumed fact). 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5122 (1977); Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex. L.Rev. 33, 52 (1934) ("A presumption is the assumption of the existence of one fact from the existence of another fact.") Another definition of a presumption is that it is "an assumption of fact resulting from a rule of law which requires such fact to be assumed from another fact or group of facts found or otherwise established in the action." 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5122 (1977) (citing Uniform Evidence Rule 13); Edward W. McCleary et. al., McCormick's Handbook of the Law of Evidence § 342 n. 30 (2d ed. 1972). Presumptions are used to prove factual matters and are found either in statutes and/or the decisional law.

Presumptions are created for several reasons. A presumption may be created for a policy reason or may be naturally inferred as a result of facts presented. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5122 (1977).[13] A natural inference is a presumption which ap-

---

**13.** *But see* Roy R. Ray, Burden Of Proof And Presumptions, 13 Tex.L.Rev. 33, 53 (1934) (A presumption is a rule of law which attaches certain procedural consequences to facts. A "presumption of fact" is merely an inference which may be drawn from the circumstances without the guidance of a rule of law.)

plies where there is a logical connection between the basic fact and the presumed fact. 21 Charles A. Wright & Kenneth W. Graham, Jr. Fed.Practice & Procedure § 5122 (1977). For example, many jurisdictions find that if a person has not been heard of for seven years, this fact may be introduced to show the person is dead. *Id.* Another example is the factual presumption that a properly addressed, stamped letter which is mailed and not returned to the sender is received by the addressee.

What about policy presumptions? Is there clear support for one under § 523(a)(15)? Congress knows how to and has expressly set forth a policy presumption in the Bankruptcy Code as seen in 11 U.S.C. § 523(a)(2)(C), where a consumer debt for luxury goods, services, and cash advances is presumed nondischargeable in certain instances. Likewise, the Bankruptcy Code provides that for a preference action, a debtor is presumed insolvent on and during the ninety days preceding the filing of the bankruptcy petition. 11 U.S.C. § 547(f). However, § 523(a)(15) does not set forth such a presumption.

Is a policy presumption applicable to § 523(a)(15)? Clearly, several concerns might be considered policy presumptions. For example, the concept that a debtor should receive a fresh start. Alternatively, some Courts have adopted the theory that a marital debt not included under § 523(a)(5) should be nondischargeable is a policy concern which should be construed as a presumption. However, both presumptions, if valid, affect a burden of going forward—not the allocation of burdens of proof.

For § 523(a)(15) purposes, does and should a presumption of a right to a fresh start prevail over the assertion that § 523(a)(15) presumes nondischargeability of certain marital debts? As the emerging, conflicting case law evidences, a lack of uniformity results when various courts—not the legislative branch of government—decide which of multiple policies should govern who bears the burdens of proof for the Ability to Pay and Detriment standards.

Furthermore and from an analytical point of view, competing presumptions simply negate each other. This leaves the burden of going forward where it is initially placed. In the § 523(a)(15) context, such competing presumptions do not answer the case law debated question on placement of burdens of proof. Also, Congress has specified rebuttable presumptions of fact in the Bankruptcy Code as seen in § 547 and § 523(a)(2)(C), among others. This coupled with the absence of expressed evidence in the Code and its legislative history that Congress intended that a particular rebuttable presumption apply and/or prevail over others in the § 523(a)(15)(A) & (B) context requires the conclusion that a policy presumption does not cause placement of the burden of proof on the debtor for either the Ability to Pay or Detriment standards. It also overlooks that a policy presumption has the same effect as a natural one, is a presumption of the existence of a fact, and is governed by the same rule of evidence as a natural presumption. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure §§ 5122, 5123, & 5124 (1977).

What about presumptions of fact? Does empirical or other data allow a factual inference that a debtor is able to pay or the relative harm of nondischarge is less? Even if such inferences of fact exist—and there is no evidence of such a natural inference—the placing of the burden of proof on the debtor by use of a factual presumption is legally wrong. Federal R.Evid. 301 governs presumptions of fact in civil actions and proceedings. It provides that

> [i]n all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, *a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion,* which remains throughout the trial upon the party on whom it was originally cast. [emphasis added.]

Federal R.Evid. 301 is applicable to "all proceedings" which includes bankruptcy cases and adversary proceedings. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5123

(1977). Since Fed.R.Evid. 301 applies to adversary proceedings for exceptions to discharge under 11 U.S.C. § 523(a) and the Bankruptcy Code does not specify the allocation of the burdens of proof or of going forward for § 523(a) purposes, a rebuttable presumption only impacts on the burden of going forward, not burdens of proof. Fed.R.Evid. 301. Thus and even if a presumption or presumptions existed, the line of cases placing burdens of proof on the debtor based on a presumption rationale ignore the impact of Fed.R.Evid. 301.[14]

An opinion of the United States Court of Appeals for the Third Circuit indicates that the error of presumption usage to allocate burdens of proof is not new and is not required to resolve this issue in the § 523(a) context. It also highlights the ease by which courts which understand the difference between burdens of proof and burdens of going forward slip into usage of these legal terms as if they are interchangeable:

> Last, we find of interest discussion in certain bankruptcy courts within this circuit regarding a rebuttable presumption [of nondischargeability] and a shifting burden of production [sic] of evidence upon a creditor's establishing a prima facie case. We understand that these bankruptcy courts were motivated to formulate the presumption and shifting burdens of persuasion in order to assist creditors in proving the elusive elements of a debtor's intent.

*Ins. Co. of N.A. v. Cohn (In re Cohn),* 54 F.3d 1108, 1119–20 (3rd Cir.1995) (Discussion regarding the intent to deceive required under § 523(a)(2).) [Citations omitted]. "[I]t is not necessary to utilize a presumption of [nondischargeability] or a shifting burden of production [sic] in processing objections to

the discharge of a debt." *Cohn,* 54 F.3d at 1120.

### (iii) Affirmative Defenses

### (a) The Evanescent Quality of Understanding What is an Affirmative Defense

The affirmative defense explanation for placing the burden of proof on the debtor for the Ability to Pay and Detriment standards needs more critical attention by the courts. Every reported decision utilizing the affirmative defense justification for § 523(a)(15)'s Ability to Pay and Detriment standards fails to clearly articulate why either is an affirmative defense, to provide a definition of, and otherwise describe what is an affirmative defense. *See e.g. Owens,* 191 B.R. at 674; *Hill v. Hill,* 184 B.R. at 754; *Hesson,* 190 B.R. at 239.

Rule 8(c) of the Federal Rules of Civil Procedure is a starting point to ascertain how an affirmative defense may be recognized. This is the case even though the draftsmen of the Rules deliberately did not provide a definition. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 1270 (1977).

Rule 8(c) is a lineal descendant of the common law plea in confession and avoidance. A plea in confession and avoidance was either by way of justification and excuse or by way of discharge. A plea in justification and excuse showed the plaintiff lacked a valid claim either due (i) to a legal right of the defendant which justified his conduct—a legal right to do what was done or not done, *e.g.* such as prosecutorial immunity, or (ii) to an act or conduct of the plaintiff which relieved the defendant of liability such as contributory negligence. A plea in discharge admitted the cause of action once existed in

---

**14.** Case law has been relatively consistent that Fed.R.Evid. 301 governs the effect of the rebuttable presumption in a preference action. *Lawson v. Ford Motor Co. (In re Roblin Industries, Inc.),* 78 F.3d 30 (2nd Cir.1996); *In re Taxman Clothing Co., Inc.,* 905 F.2d 166 (7th Cir.1990); *Clay v. Traders Bank of Kansas City,* 708 F.2d 1347 (8th Cir.1983). It does not place the burden of proof on any party. It simply shifts the burden of going forward to the party against whom the presumption exists with respect to the fact issue which the presumption is used to establish. The

same is true with regard to the effect of the presumption of § 523(a)(2)(C) on the burden of proof. *J.C. Penney Co. v. Leaird (In re Leaird),* 106 B.R. 177, 179 (Bankr.W.D.Wis.1989); *Norwest Fin. Consumer Discount Co. v. Koch (In re Koch),* 83 B.R. 898, 902 (Bankr.E.D.Pa.1988) (The burden of proof is on the creditor to show that § 523(a)(2)(C) applies. The presumption, when established, does not shift the burden of proof. It *only* shifts to the debtor the burden of going forward to introduce evidence to rebut the presumed state of affairs.)

the plaintiff, but provided that it was subsequently discharged by law or fact, for instance bankruptcy. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 1270 n. 2 (1977).

Under common law pleading, a party generally could not deny the plaintiff's allegations and simultaneously assert new defenses. A plea in confession and avoidance, however, allowed a defendant admitting that a plaintiff demonstrated a prima facie case to allege new material that would defeat the otherwise valid cause of action. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 1270 (1977).

Federal R.Civ.P. 8(e) eliminates the imposed election between denying allegations in the complaint or asserting other defenses. It allows a defendant to set forth a denial and requires that the defendant also raise Rule 8(c) affirmative defenses. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 1270 (1977); Fed.R.Civ.Proc. 8(e). Effectively, the pleader may deny allegations and simultaneously assert alternative and conflicting defenses.

Federal R.Civ.P. 8(c), which was modeled after early codes which formulated a list of affirmative defenses based on the common law approach, establishes a list of matters constituting affirmative defenses. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 1270 (1977). Nineteen defenses are enumerated. Fed.R.Civ.P. 8(c); 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 1270 (1977). The list also includes a catch-all clause. The clause requires a party to affirmatively set forth "any other matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c); 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 1271 (1977).

Whether a nonenumerated defense is an affirmative one under the catchall clause depends on several factors which unsurprisingly include considerations identical to those used to allocate burdens of proof: precedent in statutes and decisional law, policy, fairness, and probability. Policy concerns may require a defendant to plead a disfavored defense, to plead an issue which would probably surprise the opposing party, or to plead it due to convenience. The fairness factor reflects the notion that if information about a particular element or claim lies within the control of one party, then that party should have to affirmatively plead the matter. The probability factor places the burden of pleading on the one benefitted from a departure from the normal. 21 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 1271 (1977).

The precedent in the Bankruptcy Code and its decisional law addressing burdens of proof under § 523(a)(15) has already been set forth and need not be repeated. It is of little help in its present, conflicting posture. With respect to the probability factor making as an affirmative defense a matter plead to change the status quo, this is the same basis discussed *supra* under the subheading "Common Law or Changing and Rechanging the Status Quo of Discharge" supporting allocation of the burdens of proof for Ability to Pay and Detriment on the party raising these exceptions within the exception to discharge of § 523(a)(15).

As to the policy factors, the fact that the Ability to Pay and Detriment standards are set forth in the statute mitigate against surprise that one might utilize these to sidestep the exception to discharge of § 523(a)(15). Additionally for the surprise factor, courts consider the logical relationship between the particular defense and whether the plaintiff will be unfairly surprised if the defense is not plead. *Hassan v. United States Postal Serv.*, 842 F.2d 260, 263 (11th Cir.1988) "The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." *Hassan*, 842 F.2d at 263 (quoting *Blonder–Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971)). Given the singular structure of § 523(a)(15), use of Ability to Pay and/or Detriment should not be a surprise, and even less likely an unfair surprise to any competent counsel. It is also a factor that has more realistic and practical application for defenses of a type not constituting exceptions

or exceptions within exceptions expressly set forth in a statute.

No reliable evidence has been presented in this case nor is any reflected in the other reported opinions discussing § 523(a)(15) and the allotment of burdens of proof to show that there is a factor or factors present in all cases making it more convenient for one party to be assigned the burdens of proof for the Ability to Pay and Detriment standards. With respect to the disfavored defense policy factor, none of the reported opinions describes why this should impose on the debtor or his/her former spouse/spouse any burdens of proof. Although some cases, e.g. *Hill v. Hill*, 184 B.R. at 754, refer to the Ability to Pay and Detriment standards as exceptions, this and similar opinions do not reflect why an asserted "exception" which is in reality an "exception within an exception" may be a disfavored defense for which the burdens of proof should be allocated to the party relying on one or both.

Such authority does, however, exist. Although the rule that an exception to a statute, including an exception within an exception, as qualifying language should be strictly construed is less rigid in its application today, it is still frequently followed. 2A Sutherland Statutory Construction § 47.11 (5th ed.1993); *see, e.g., Mills Music, Inc. v. Snyder*, 469 U.S. 153, 173–174, 105 S.Ct. 638, 650, 83 L.Ed.2d 556 (1985). The strict, narrow application courts have given to exceptions and exceptions within exceptions reflects that § 523(a)'s exceptions to discharge are to be narrowly construed against those seeking to invoke nondischargeability. This, too, the bankruptcy case law reflects. *See, e.g., Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir.1994); *TranSouth Fin. Corp. v. Johnson*, 931 F.2d 1505, 1508 (11th Cir.1991). What the case law under § 523(a) of the Bankruptcy Code does not yet clearly and consistently recognize is that the exception within the exceptions to discharge provisions of § 523(a)—subparts of subsections of provisions such as § 523(a)(3), (a)(5), (a)(8), and (a)(15)—are disfavored defenses under traditional case law interpretations of an exception within an exception.

Having set forth a litany of factors utilized to decide if a matter falls within Rule 8(c)'s "any other matter constituting an avoidance or affirmative defense," case law discussion of just what is an affirmative defense is more useful from a practical application perspective. An affirmative defense is either a factual or legal one. It is a defense that raises matters extraneous to the plaintiff's prima facie case and does not merely controvert it. A defense that merely points out a defect in the plaintiff's prima facie case is not an affirmative defense. *Flav–O–Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.)*, 846 F.2d 1343, 1349 (11th Cir. 1988) (In a reclamation proceeding pursuant to 11 U.S.C. § 546(c), the seller must prove possession by the debtor as part of its prima facie case. Lack of possession is not an affirmative defense. It merely controverts an integral element of the seller's prima facie case.); *Hassan v. United States Postal Service*, 842 F.2d 260, 263 (11th Cir.1988) (In an action under the Federal Torts Claims Act for damages due to injuries caused by the driver of a government vehicle, evidence of collateral source payments is an affirmative defense under the catchall provision of Fed. R.Civ.P. 8(c) because such evidence was distinct from the evidence regarding the accident and damages suffered by the plaintiff.)

The focus of the *Flav–O–Rich—Hesson* form of analysis is on those elements a plaintiff must demonstrate to establish a prima facie case: a quantum of evidence presented by a plaintiff which at a minimum and without other evidence being presented by any party is sufficient for a trier of fact to decide for or against a plaintiff and not one where a plaintiff fails to prove necessary facts allowing resolution of a case to occur based on an insufficient amount of proof of necessary facts. In the § 523(a)(15) realm, the common law allocation based on changing of the status quo set forth *supra* under the subheading "Common Law or Changing and Rechanging the Status Quo of Discharge" supports the Ability to Pay and Detriment standards being designated under the Fed.R.Civ.P. 8(c) rubric affirmative defenses.

Compounding the difficulty with ascertaining whether § 523(a)(15)'s Ability to Pay and

Detriment standards are affirmative defenses is the realization that many of the factors considered to support making them affirmative defenses have also been urged either standing alone or in contraposition to others in support of each not being an affirmative defense. For instance, policy is one. There is the bankruptcy policy of giving a debtor a fresh start and a contrary policy that certain marital debts are to be nondischargeable. Fairness is another. It may be true in some instances that a debtor is better able to demonstrate his/her inability to pay or the benefit of the discharge outweighs the harm to the former spouse/spouse. In others, the opposite will be true. Despite numerous cases relying on the bare contention that the debtor is in the better position to prove the Ability to Pay and Detriment standards, one fact is certain: this assumption universally applied is wrong! In many cases, a nondebtor former spouse/spouse may be in the better position to prove each. Also, one could argue that both standards are affirmative defenses because they constitute matters extraneous to the prima facie case the creditor must present. Alternatively and as the opinions of the Minority Group demonstrate, one could respond that the standards are part of the former spouse/spouse's prima facie case. To the contrary and if Ability to Pay and Detriment standards are extraneous, the extraneous nature is clearly not a surprise at trial because each is set forth expressly in § 523(a)(15)(A) & (B). It is the various courts' usage of only one or a few of the necessary factors without a weighing of all relevant ones which gives the perception of correctness to rationale which form only a part of the necessary universe of factors to be weighed.

Such an application of these factors to determine whether the Ability to Pay and Detriment standards are affirmative defenses may be expected to and, as the case law evidences, has caused various courts to hold the standards to be affirmative defenses and others to hold that one or both are not affirmative defenses. The proper analysis requires not just juxtaposition and contraposition of reasons, but a weighing of the relative significance accorded to the issues considered to determine what is an affirmative

defense just as is mandated in allocating burdens of proof. When this is done, the weight of the various factors tips the balance to each of the standards of § 523(a)(15)(A) & (B) being an affirmative defense.

### (b) More on the Rationale For the Ability to Pay and Detriment Standards Being Affirmative Defenses

Two further reasons used to support the affirmative defense contention require additional comments. One is the former spouse/spouse lacks motivation and sufficient information to prove the standards. The other is an analogy which is made to the structure and language of 11 U.S.C. § 523(a)(15) with that of 11 U.S.C. § 523(a)(8)(B) conjoined with case law allocating the burden of proof for § 523(a)(8)(B) to the debtor.

Under scrutiny, the argument that the former spouse/spouse lacks motivation reveals its superficial nature. The former spouse/spouse is capable of proving his/her detriment and evidence on why it outweighs the benefit of a debtor's discharge. The argument that the debtor always possesses the proof regarding the standards is less than always accurate as a factor in justifying allocation of the burden of proof. *See, e.g., Willey v. Willey (In re Willey)*, 198 B.R. 1007 (Bankr.S.D.Fla.1996) No empirical data exists to demonstrate this assumption to be a true state of fact in all cases. Furthermore, the discovery rules which are applicable to adversary proceedings give the plaintiff the ability to obtain necessary information via interrogatories, request for production, depositions, admissions and other means. As the case law and secondary authorities cited discussing how one ascertains what is an affirmative defense demonstrate, none lists a party's motivation or lack thereof to prove an issue. Likewise, one's better access—not exclusive access—to proof *standing alone* as a factor evidencing an affirmative defense is not sufficient.

As already set forth, the argument by itself that the similarity between § 523(a)(15)(A), (B) and § 523(a)(8)(B) compels the conclusion that the Ability to Pay and Detriment standards are affirmative de-

fenses is subject to dispute. Again, the factors to determine what is an affirmative defense do not utilize structural similarity of or like treatment of similar provisions without more. The rationale as articulated in the reported opinions making the Ability to Pay and Detriment affirmative defenses is not, as its proponents claim, any more convincing than the arguments asserted against this position: this is due in substantial part to reliance on only a few of the factors which need to be considered. This warrants repetition: the weighing of the various factors demonstrates the Ability to Pay and Detriment standards are affirmative defenses.

### (iv) Exception Within an Exception

As already intimated in portions of this opinion, one of the clearest and best reasons supporting *placing*—not shifting—the burdens of proof on the debtor for Ability to Pay and Detriment is the "exception within an exception" principle which has been used in the § 523(a)(8)(B) context to place the burden of proof of undue hardship on the debtor. It is unfortunate that it has not been more thoroughly considered, discussed and analyzed in the § 523(a)(15) case law.

Under the holding in *Hill v. Smith*, 260 U.S. 592, 595, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923), the party claiming the exception to a statutory provision is required to prove the exception. This principle is also held to apply to an exception within an exception. *Hill,* 260 U.S. at 595, 43 S.Ct. at 220; *Doyle v. Higher Education Assistance Foundation, U.S. Department of Education (In re Doyle),* 106 B.R. 272 (Bankr.N.D.Ala.1989) (Debtor bears the burden regarding § 523(a)(8)(B) which is construed as an exception to an exception); *Conn. Student Loan Foundation v. Keenan (In re Keenan),* 53 B.R. 913 (Bankr.D.Conn.1985) (The debtor bears the burden only with regard to § 523(a)(8)(B) which is construed as either an affirmative defense or an exception to an exception). Analysis of *Hill v. Smith* helps reveal why an "exception within an exception" is the best reason for placing the burdens of proof on a debtor for Ability to Pay and Detriment.

In *Hill v. Smith,* the Supreme Court addressed the allocation of the burden of proof

in a case in which a creditor sought to have a debt determined nondischargeable for a debtor's alleged failure to schedule the creditor. The Supreme Court's decision rested on its interpretation of the Bankruptcy Act of 1898, c. 541, § 17a(3), 30 Stat. 550, as amended, which provided that a discharge

> shall release a bankrupt from all of his provable debts except such as * * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, *unless such creditor had notice or actual knowledge of the proceedings in bankruptcy.* [emphasis added]

Note the structural similarity of § 17a(3) of the Bankruptcy Act of 1898, as amended, to § 523(a)(15). In *Hill,* the creditor-plaintiff put on proof of an unsatisfied judgment. The defendant—a debtor with a discharge in bankruptcy—proved his discharge and rested. The rebuttal was introduction of the bankruptcy schedules showing the plaintiff creditor was not scheduled. The Massachusetts trial court denied the defendant's request for a ruling that the plaintiff-creditor had the burden of proof to show no notice and no actual knowledge of the defendant's bankruptcy. Judgment was entered by the trial court for the plaintiff-creditor.

In addressing the burdens of proof under § 17(a)(3) of the Bankruptcy Act of 1898, the Supreme Court's *Hill* opinion contains this discussion:

> By the very form of the law the debtor is discharged subject to an exception, and one who would bring himself within the exception must offer evidence to do so. But there is an exception to the exception, 'unless the creditor had notice' etc., and, by the same principle if the debtor would get the benefit of that he must offer evidence to show his right. We agree with the Court below that justice and the purpose of the section justify the technical rule that if the debtor would avoid the effect of his omission of a creditor's name from his schedules he must prove the facts upon which he relies. [citations omitted]

*Hill,* 260 U.S. at 595, 43 S.Ct. at 220.

Thus, *Hill*'s analysis and ruling on the allocation of the burden of proof in the context of

a provision strikingly like § 523(a)(15) supports the placing of the burdens of proof on a debtor for Ability to Pay and Detriment as exceptions within an exception.[15]

Joined with the *Hill* opinion is a body of case law from other substantive areas consistent with *Hill*'s holding. *See, e.g. McKelvey v. United States,* 260 U.S. 353, 356–357, 43 S.Ct. 132, 133–34, 67 L.Ed. 301 (1922); *United States v. Durrani,* 835 F.2d 410, 420–421 (2nd Cir.1987); *United States v. Beason,* 690 F.2d 439, 445 (5th Cir.1982); *Firefighters Inc. for Racial Equality v. Bach,* 611 F.Supp. 166, 169–171 (D.Colo.1985). Scrutiny of this non-bankruptcy case law also reveals that those references and factors which should be considered and weighed to determine (i) the allocation of burdens of proof, and (ii) what is an affirmative defense are the same as those for deciding whether such provisions are exceptions and exceptions within an exception: policy, probability, convenience, fairness, the text of a statute, its structure, and legislative history. *See Durrani,* 835 F.2d at 420–421; *Firefighters Inc.,* 611 F.Supp. at 169–171. A weighing of these factors as already set forth in this Court's discussion of allocation of burdens of proof and what is an affirmative defense indicates that the Ability to Pay and Detriment standards are exceptions within an exception and as such affirmative defenses for which the burden of proof for both 11 U.S.C. § 523(a)(15)(A) and (B) are allocated to the debtor.

### (v) What About 11 U.S.C. § 727(a)(3)?

The reported opinions discussing allocation of burdens of proof under § 523(a)(15) also do not evidence contemplation of how courts have resolved, if at all, allocation of burdens of proof under a subsection of 11 U.S.C. § 727(a)—§ 727(a)(3)—with a structure similar to § 523(a)(15)'s. Although there are fewer reported opinions containing a discussion of this issue under § 727(a)(3), it has been addressed. *See Lansdowne v. Cox (In re Cox),* 41 F.3d 1294, 1296–1297 (9th Cir. 1994); *Meridian Bank v. Alten,* 958 F.2d 1226, 1232–1234 (3rd Cir.1992); *First Federated Life Ins. Co. v. Martin (In re Martin),* 698 F.2d 883, 887–888 (7th Cir.1983).

In its opinion, the *Cox* court places the burden of proof for denial of discharge of a debtor for concealing, destroying, mutilating, falsifying, or failing to keep or preserve any recorded information from which a debtor's financial condition or business transactions may be ascertained on the party seeking denial of discharge. *Cox,* 41 F.3d at 1296. It then places on the debtor the burden of proof to justify the nonexistence and/or inadequacy of the debtor's records. *Id.* Thus, the burden of proof is on a debtor to demonstrate the "unless such act or failure to act was justified under all of the circumstances of the case...." 11 U.S.C. § 727(a)(3); *Cox,* 41 F.3d at 1296 (The debtor has the burden of proof for the justification clause of § 727(a)(3)). It is unfortunate that the *Cox* court's opinion uses a shifting burden of proof rationale to accomplish this allocation. *Cox,* 41 F.3d at 1296. However, it further demonstrates why courts and lawyers are confused on issues of allocation of burdens of proof.

As to the *Meridian Bank* and *Martin* opinions, the courts hold that the burden of proof under § 727(a)(3) remains with the party seeking denial of discharge. *Meridian Bank,* 958 F.2d at 1232; *Martin,* 698 F.2d at 887. Once the plaintiff meets the burden of persuasion, the burden of going forward is stated to shift to the debtor the requirement that he/she put on evidence of justification under § 727(a)(3). *Meridian Bank,* 958 F.2d at 1233; *Martin,* 698 F.2d at 887. Despite this use of shifting of the burden of going forward language, analysis of what occurred in *Meridian Bank* and *Martin* reveals that each court placed the burden of proof for the "unless" justification on the debtor. Regret-

---

**15.** Application of the "exception within an exception" principle to place the burden of proof on a debtor for Ability to Pay and Detriment also requires recognition that reconsideration should be given to burden of proof allocation under other portions of § 523(a) where the exception within an exception principle of *Hill v. Smith* has not been utilized, *e.g.,* §§ 523(a)(3), (a)(5), and/or has been used for only a portion of the subsection, *e.g.* § 523(a)(8).

tably, both the *Meridian Bank* and *Martin* opinions show that these courts fell prey to some of the identical difficulties encountered by courts discussing § 523(a)(15)'s burdens of proof allotments: placing a burden of proof on the debtor by use of a shifting burden of going forward and implicitly assuming that only one burden of proof exists under § 723(a)(3).[16] In spite of these courts' usage of burden of proof and burden of going forward terminology, what these § 727(a)(3) opinions do is support allocation of the burdens of proof for Ability to Pay and Detriment to a debtor in a § 523(a)(15) case.

### (vi) Summary on Who Must Prove What

Various references have been examined to facilitate determination of the allocations of the burdens of proof: the Bankruptcy Code including § 523(a), legislative history, treatises, and case law. As the Bankruptcy Code illustrates in § 362 and § 363, Congress knows how to apportion burdens of proof. However, it chose not to act in the § 523(a) context. A review of § 523(a) case law also discloses that the majority of courts discussing § 523(a) place the burden of proof on the party opposing discharge. The inconsistency arises with the subparts of subsections of § 523(a). The burden is clearly split by case law in only one other context under § 523(a): § 523(a)(8).

The legislative history of § 523(a)(15) was also examined. Like the Bankruptcy Code, it was silent as to the proper allotment of the burdens of proof under § 523(a)(15). The argument based on *Grogan v. Garner* that uniformity of allocation of the burdens of proof under § 523(a) is only appropriately implemented by recognition that (i) § 523(a) sets forth exceptions to discharge for which the burden of proof is placed on the party seeking to invoke an exception, and (ii) those

subparts of subsections of § 523(a) which set forth an "exception within an exception" necessitate allocation of the burden of proof for an exception within an exception to discharge to the party seeking to place obligations back into the dischargeable classification.

Certain common law factors have been considered when allocating the burden of proof. The primary factors are policy, probability, fairness, and convenience. A consideration and weighing of the policy issues favors placing the burden of proof on the debtor to prove the Ability to Pay and Detriment standards which is highlighted by the common law rule regarding changing of the status quo coupled with the Supreme Court's *Hill* exception analysis. The disfavored defense policy factor supports allocation of the Ability to Pay and Detriment burdens of proof on the debtor: each is an exception within an exception. For probability, the debtor as the one seeking to return his/her status from nondischarged to discharged as an "exception within an exception" is allocated this burden of proof. Convenience and fairness do not clearly favor either party. Due to discovery, both have access to information, and it is equally fair to place the burden on both parties. The discovery process and the fact that the Ability to Pay and Detriment standards are set forth in § 523(a)(15) also support the absence of unfair surprise from use of either of these standards. The weight of the policy, probability, and disfavored defense factors place the burdens of proof on the debtor for Ability to Pay and Detriment.

Along with the Code, legislative history, and common law factors, the developing body of § 523(a)(15) case law was consulted. As noted, the opinions split into three groups regarding who has the burden of proof: Majority Group, Bifurcated Group, and Minority

---

**16.** Unlike § 523(a)(15) case law, the *Meridian Bank* and *Martin* courts are in part lead into the conclusion that only one burden of proof exists by the language of Rule 4005 of the Federal Rules of Bankruptcy Procedure and its Bankruptcy Act predecessor, Rule 407, along with the advisory committee note to Rule 4005. *Meridian Bank,* 958 F.2d at 1233; *Martin,* 698 F.2d at 887.

Even if this were a correct view of Rule 4005—and this Court does not believe it to be—it is one which places a court adopted rule of procedure in conflict with the Bankruptcy Code. To the contrary, this Court does not view Rule 4005 as imposing on § 727(a)(3) only one burden of proof.

Group. Although this Court is adopting the Majority Group's position, it rejects the methods utilized in many of the opinions of this group for allocation of the burdens of proof due to disagreement with, among others, these reasons relied on in the reported decisions: (i) the determination that rebuttable policy presumptions or natural inferences affect the allocation of the burden of proof in a § 523(a)(15) proceeding, (ii) the bases utilized to make the Ability to Pay and Detriment standards affirmative defenses, (iii) the notion of a shifting burden of proof, (iv) the assumption that only one burden of proof exists in these types of cases and thus only one burden of going forward, (v) the belief that current case law decisions on burdens of proof under § 523(a) have been decided correctly, and (vi) the analogy arguments to subparts of § 523(a) such as § 523(a)(15) to § 523(a)(8) from the context of inconsistent treatment of exceptions within exceptions in other subparts of § 523(a).

Conjoined with this Court's disagreement is that virtually all of the reported opinions discussing the Ability to Pay and Detriment standards of § 523(a)(15) demonstrate the elusive physiognomy of allocations of burdens of proof: each assumes—sometimes explicitly and other times implicitly—that the burden of going forward with respect to an issue for which a plaintiff bears the burden of proof shifts to the defendant *both* (i) the rebuttal evidence necessary to contest a plaintiff's prima facie case *and* (ii) the evidence to prove the issues for which the burden of proof is placed on the defendant. These opinions fail to reflect that multiple burdens of proof may be allocated within a case and that separate burdens of going forward may exist and shift back and forth for each issue for which different parties bear the burden of proof. For the same reasons, this Court rejects the Bifurcated Group's stated methodology for allocation of the bur-

dens of proof for Ability to Pay and Detriment.

■ A review of and balancing of the various references results in the conclusion that multiple burdens of proof are at issue in a § 523(a)(15) action. The plaintiff-spouse/former spouse bears the burden of proof regarding the marital debt obligations and their occurrence, and the debtor-defendant is allotted the burdens of proof regarding the Ability to Pay and Detriment standards. Also connected with each burden of proof is a burden of going forward. As noted earlier, the burden of proof does not shift, but the burden of going forward for each burden of proof may go back and forth between the parties based on the evidence presented. So once the plaintiff-former spouse/spouse presents sufficient evidence to establish that § 523(a)(15) is applicable due to the existence of a debt which (i) is not of the type under § 523(a)(5), and (ii) was incurred in the course of a divorce or separation, the *burden of going forward* shifts to the debtor to rebut the evidence presented by the spouse/former spouse on these fact issues. At the same time, the debtor-defendant must present sufficient evidence to meet his/her burden of proof to establish inability to pay and/or detriment under § 523(a)(15)(A) & (B). If this debtor-defendant's burden of proof is initially met, the burden of going forward to rebut this evidence on Ability to Pay and/or Detriment shifts to the former spouse/spouse.[17]

## V. The Case at Hand or are Mr. Stone's Disputed Marital Debts to Mrs. Stone Dischargeable?

Having concluded what this Court believes to be the appropriate allocation of and basis for allotting burdens of proof under § 523(a)(15), it must address the question of whether each party in this case has met

---

**17.** When dealing with allocation of burdens of proof, one should maintain this perspective: the rule adopted by this Court for § 523(a)(15) is in keeping with the day-to-day litigation practices of courts and attorneys that allocation determinations are made presubmission of a case to the

trier of fact. However, various legal scholars have adopted the position that allocation of burdens of proof need not—probably should not—occur until a matter is submitted to the fact trier. Edward W. McCleary et al., McCormick's Handbook of the Law of Evidence § 336 (2d ed.1972).

his/her burden(s) of proof by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Mrs. Stone met her burden of proof by introducing evidence that the Rich's credit card, MasterCard, and the alimony in gross debts were not of the type within § 523(a)(5)'s purview, were owed to her as a former spouse, and were incurred as part of the Divorce Decree. This was not rebutted by Mr. Stone.

### (i) Mr. Stone's § 523(a)(15)(A) Ability to Pay

■ Since Mr. Stone has been allocated the burdens of proof with regard to the Ability to Pay and Detriment standards, he had to present sufficient evidence to meet one of these standards before these debts may be discharged. The only evidence presented related to disposable income of Mr. Stone. At the time of the divorce and bankruptcy filing, Mr. Stone was employed by Banctec and receiving a salary of slightly in excess of fifty-three thousand dollars ($53,000.00) a year. His net pay was from two thousand one hundred dollars ($2,100.00) to two thousand five hundred dollars ($2,500.00) with expenses of approximately three thousand dollars ($3,000.00). Subsequent to the divorce and the bankruptcy filing, he voluntarily left Banctec and obtained employment as a salesperson at Gateway Homes. He presented evidence that his yearly salary is around twenty-six thousand dollars ($26,000.00). He also presented evidence that his net pay is around one thousand six hundred dollars ($1,600.00) per month, and his monthly expenses are around two thousand dollars ($2,000.00).

If the Court accepted this evidence as presented and assumes that disposable income is the relevant test since no other evidence of ability to pay was presented, the Debtor currently spends four hundred dollars ($400.00) more than he makes. At the time of filing bankruptcy, his schedules reflect, if accepted as accurate, a negative disposable income of one hundred sixty-seven dollars and fourteen cents ($167.14). However-

er, three hundred fifteen dollars ($315.00) of his listed expenses at the time of trial were for monthly payments on two SouthTrust Bank loans for which no evidence was presented that they are not dischargeable, and the evidence presented is that he has continuously made these payments. No evidence was presented that the payment status was any different at the date of his filing bankruptcy. Coupled with his demonstrated continuous payment of these SouthTrust Bank obligations post-bankruptcy—ones which in the aggregate represent more on a monthly payment basis than those which Mrs. Stone requests be excepted from discharge—is the inconsistency in Mr. Stone's claimed expenses and testimony all of which have caused this Court to reject the correctness and completeness of Mr. Stone's testimony on his inability to pay Mrs. Stone the alimony in gross and to pay the two credit card debts at issue in this case. In other words, this Court holds that Mr. Stone did not present sufficient, credible evidence to meet his burden of proof with regard to the Ability to Pay standard.

### (ii) Comparative Benefit–Detriment

To receive a discharge under § 523(a)(15), Mr. Stone may alternatively establish that discharge of the debt would result in a benefit to him which outweighs the detriment to Mrs. Stone and/or their daughter. 11 U.S.C. § 523(a)(15)(B). In this case, this Court has also not been presented sufficient evidence to make such a determination. The only arguments and evidence presented related to comparative financial benefit and harm. The financial circumstances of Mrs. Stone and/or her daughter at the date of Mr. Stone's bankruptcy filing and thereafter were not sufficiently presented. For instance, no information of income for 1995 or estimated 1996 income for Mrs. Stone is in the record before this Court. All that was presented is that Mrs. Stone earns approximately eleven dollars per hour. No evidence of the number of hours worked or of a total monthly take home pay was presented. So, too, for the expenses of Mrs. Stone.

An exhibit was entered setting forth Mrs. Stone's expenses. However, some expenses were monthly, some for six months, and some for the 'summer' with no definition of summer. No accurate aggregate figure was given for a month or a year. As to Mr. Stone's contended financial status at any point in time from his filing of bankruptcy forward, this Court simply does not accept his proffered evidence.

Given this deficiency in evidence, this Court is not able to make any comparison for purposes of the Detriment standard under § 523(a)(15)(B). As a result, Mr. Stone as the one assigned the burden of proof on this issue did not meet his burden.

### D. Objection to Discharge

■ Along with the request for exception of certain debts from discharge, Mrs. Stone also asked that Mr. Stone's discharge be denied pursuant to 11 U.S.C. § 727(a)(4)(A) due to failure to schedule all debts. Section 727(a)(4)(A) provides that the debtor shall receive a discharge, unless he knowingly and fraudulently made a false oath or account that was in the case or connected to the case. The false oath must be fraudulent and material to justify denial of discharge. *Swicegood v. Ginn*, 924 F.2d 230 (11th Cir.1991); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir.1984). The Plaintiff, as the party requesting the denial of discharge, has the burden to prove the elements set forth in § 727(a)(4)(A), Fed.R.Bankr.P. 4005.

Mr. Stone did not schedule at least two debts: an American Express credit card obligation and one SouthTrust Bank loan. The only evidence presented is that these debts were left off due to a misunderstanding by Mr. Stone. Among other reasons, he testified that it was his understanding that if he planned to pay a debt in its entirety, they did not need to be disclosed in his bankruptcy schedules. Mrs. Stone did not present sufficient evidence (i) to rebut the explanation, and/or (ii) to establish that the action was fraudulent and material. Therefore, Mr. Stone's discharge is *not* denied under 11 U.S.C. § 727(a)(4)(A).

### E. Conclusion

Two potential bases for the exception to discharge of marital debts Mr. Stone owes to Mrs. Stone were raised: 11 U.S.C. §§ 523(a)(5), 523(a)(15). In addition, Mrs. Stone requested that a discharge be denied Mr. Stone pursuant to 11 U.S.C. § 727(a)(4)(A).

The marital debts for alimony in gross, the MasterCard, and the Rich's credit card are excepted from discharge under § 523(a)(15). Additionally, Mr. Stone's (i) child support of five hundred fifteen dollars ($515.00) per month, (ii) health insurance coverage for Mrs. Stone and their child, (iii) payment of medical bills incurred by Mrs. Stone and the child after divorce and before health insurance coverage was obtained, and (iv) payment of the child's reasonable and necessary college expenses are nondischargeable under 11 U.S.C. § 523(a)(5). However, Mr. Stone will not be denied a discharge under 11 U.S.C. § 727(a)(4)(A).